Levy vs. Ward, Administratrix.

No. 996.

M. LEVY VS. MRS. V. A. WARD, ADMINISTRATRIX.

MRS. A. R. HOPE, TUTRIX, INTERVENOR.

‑Oral evidence is admissible to show and correct an error in the description of real estate, contained in the act of sale of the property.
The fact that the vendee afterwards claimed the property, under the erroneous description, from the vendor's estate, does not estop him from proving such error by verbal evidence.

A PPEAL from the Sixth Judicial District Court, parish of Morehouse. *Vaughan,* judge *ad hoc.*

| 33 | 1033 |
|---|---|
| 46 | 1575 |

| 33 | 1033 |
|---|---|
| 50 | 215 |

| 33 | 1033 |
|---|---|
| 105 | 793 |

| 33 | 1033 |
|---|---|
| h110 | 465 |

| 33 | 1033 |
|---|---|
| 112 | 163 |

| 33 | 1033 |
|---|---|
| 116 | 955 |

| 33 | 1033 |
|---|---|
| f119 | 478 |

*Todd & Todd* and *Newton & Hall* for Plaintiff and Appellee :

First—Parol evidence is admissible for the purpose of correcting an error or mistake in a written deed to land.

Second—Parol evidence is admissible to show that such deed is not the repository of the intentions of the contracting parties.

*Bussey & Naff* for Defendant and Appellant:

The sale of a thing belonging to another, is null and conveys no title. C. C. 2452 ; 27 An. 492.

Parol evidence is inadmissible to prove a sale of, or title to, an immovable. C. C. 2275, 2276, 2444; 3 La. 460; 12 M 651; 10 R. 467; 9 R. 414; 12 An. 213 and 261 ; 17 An. 140; 30 An. 898 ; 32 An. 635.

Article 2275 of the Civil Code declares that titles to immovables must be in writing; and testimonial proof is inadmissible to establish such sale or title, except that the confession of the vendor or vendee shall be binding on him when made on oath in answer to interrogations propounded for that purpose. And this is the only exception to the rule excluding all parol evidence. 4 La. 169, 377; 2 La. 595; 12 An. 114; 17 An 1; 28 An. 806; 30 An. 898.

If a deed is shown to be null, parol evidence is inadmissible to give it validity. 5 La. 457.

A party to a suit is estopped from disputing or gainsaying a fact which he has solemnly admitted in a judicial proceeding, and more assuredly is he estopped, if the admission be made under oath. Greenleaf § 22, 27 ; 2 An. 269 ; 4 An. 417 ; 5 An. 22; 6 An. 722 ; 11 An. 710 ; 23 An. 765; Bigelow on Estoppel 45, 157.

Where it is sought to correct, alter or change a written deed to land, the plaintiff must be required to make his case certain, by the best proof possible, 15 La. 311; and when that proof is the plaintiff's own testimony, contradicted by other evidence in the record, it will not be sufficient to make out his case.

If the evidence shows that it was impossible for the testimony of plaintiff, with reference to a material point at issue, to be true, his whole testimony will be disregarded.

An act not recorded cannot affect the rights of third parties. 30 An. 10 ; 29 An. 315 ; 21 An. 427 ; 22 An. 113 ; 25 An. 290 ; C. C. 2264 et seq.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to cause to be judicially ‑corrected an error alleged to have been committed in the description of certain real estate, which the plaintiff claims to have acquired, in 1873, from G. C. Ward, since deceased.

The complaint is, that the land was, by inadvertence or mistake,

described as being in section *20*, instead of section *21*, of township 22, in Morehouse parish, in this State.

As administratrix, representing the succession of G. C. Ward, the defendant, pleaded the general issue, denying specially that Ward ever was divested of title to the land claimed as having been sold.

The tutrix administering the succession of E. J. Hope intervened, claiming to be a creditor of Ward for a sum liquidated by judgment and secured by judicial mortgage on the real estate alleged to have been sold.

From a judgment making the correction asked, and dismissing the claim of the succession of Hope, both the defendant and the intervenor have appealed.

On the trial, the plaintiff introduced in evidence his title from Ward, and two acts of lease made by him to the latter. In the first act, dated February 26th, 1876, the property is stated to be known as the "Willy Ward Plantation," and to be leased at four dollars per acre, there being about ninety acres susceptible of cultivation. In the second act, dated April 19th, 1877, the plantation leased is mentioned as being the "Ward Place," the same which Levy purchased from Ward on November 15th, 1873.

The next offered oral testimony to prove the error alleged to exist in the description of the property mentioned in his title from Ward, viz: that the number of the section, stated as *20*, should have been *21*, of township 22.

To the admission of this testimony the defendant objected, on several grounds, and, to an adverse ruling, he reserved a bill.

We think the court ruled correctly, under the circumstances.

It is clear that, had the title contained no specific description of the real estate, but merely the *name* by which the property sold was known, oral testimony would have been admissible, to show the location and measurement of the land.

The title and the leases, taken together, as the acts of the parties, Levy and Ward, show, first, the specific description, and next, the *name* by which the property was commonly known. The land sold by Ward to Levy, on November 15th, 1873, was fully identified by Ward, in the leases, as the "Willy Ward Plantation," or the "Ward Place." The name of the land, the *provenance* of which is expressly stated, was, therefore, by Ward himself, legally interpolated into the deed, which he had previously made to Levy, at the date mentioned. So that the description of the property sold, was, as between Levy and Ward, in 1876 and 1877, amplified by the incorporation into the act of the two similar names by which the land went and was known. The irresistible conclusion is, therefore, that the real estate mentioned in the deed of

sale is the "Willy Ward Plantation," or the "Ward Place," which means one and the same land, such as the same then stood.

In presence of the error charged in the description, the insertion of the name of the property in the sale laid a foundation and opened a door for the reception of oral testimony, explanatory and descriptive of what the land thus named was composed of at the time of purchase; in other words, it justified the admission of parol proof to show its location, measurement and condition. It is well settled that parol evidence is admissible to show error in the *descriptio loci et descriptio personæ*, in the date contained in an act concerning real estate, namely, to show that *the instrument* was not made the actual depositary of the intention of the parties. If such was not the rule of law, no erroneous description of real estate acquired or sold could ever be established and rectified, as against an author or purchaser in bad faith, or against his representatives, in the event of his death. 12 M. 400; 15 L. 311; 9 L. 566; 4 L. 352; 1 R. 257; 7 R. 548; 12 R. 371; 9 An. 29; 3 An. 193; 12 An. 142; 13 An. 25, 318, 410; 14 An. 199, 209; 18 An. 577; 26 An. 257, 545; 3 Greenleaf, Sec. 360 *et seq.;* 4 Starkie Ev. 10 and 18.

The authorities relied upon by the defendant's learned counsel, for the exclusion of the oral testimony offered, apply to cases in which, in the absence of all muniment of title, parties seek to recover real estate; but they have no bearing to cases in which parties endeavor to show error when deeds have actually been executed.

The reception of parol testimony to establish a clerical error, almost patent in the description of land contained in the deed, as also to explain lurking ambiguities, to identify the property, to prove fraud practiced in the transfer of land, to show possession, to show boundaries, is no infringement of the rule which demands that title to real estate be evidenced in writing *only.* 9 M. 40; 11 M. 449; 12 M. 649, 670; 4 N. S. 190; 5 N. S. 297; 8 N. S. 161, 660; 10 L. 209; 17 L. 421; 19 L. 258; 2 R. 72, 85; 3 An. 193; 4 An. 441; 5 An. 231, 410; 13 An. 25; 15 An. 483; 21 An. 548, 470; 26 An. 257; 16 An. 307; 20 An. 211; 2 An. 909; 4 L. 351; and authorities above referred to.

The other objections raised to the reception of the oral testimony, because the title from Ward is an absolute nullity, as it purports to transfer property belonging to another; because the oral testimony offered is not *the oath* of the seller; because the plaintiff is estopped, having in a former suit claimed, under oath, and recovered title to the land, described as being in section 20, we do not consider well founded.

The title is not an absolute nullity. It is no nullity at all. It is a valid instrument, irregularly drawn up, but which can be rectified, so as to be perfected, so as to accord with the original intention of the parties.

A party seeking to establish an error in the description of real

estate sold to him, is not restricted to the formality of probing the conscience of his adversary. He may, at his option, altogether dispense from such resort, and have recourse to such legal evidence as will prove the error. It is the party to whom no title whatever has been made, but who was placed in possession by the vendor, under a verbal sale of real estate, who cannot recover title, *unless* upon complying with the law requiring the propounding of interrogatories to the vendor. C. C. 2275; 12 An. 213; 28 An. 806; 30 An. 898; 17 An. 1; 4 L. 377, 167; 2 L. 595; 12 An. 114.

From the fact that the plaintiff has, in a different action against the succession of Ward, 32 An. 784, claimed under oath and recorded title to the land, as situate in section *20*, it does not follow that he is estopped, under a charge of error, from alleging and proving that the land lies in section *21*. When he swore, and claimed, as he did, he was under the honest impression that he was giving a correct description of the property which he was revendicating. The error thus committed is likewise susceptible of revision and correction. The rectification of the description of the land in the suit will necessarily follow that in the deed. The doctrine of estoppel cannot be extended to a case of that description, particularly in a suit brought to correct the *fundamental error* and which arises between the original parties, and specially when the plea is urged by the representatives of the party against whom error is charged, and who is represented by them as having fraudulently caused the error. The testimony can be adduced, whether such party be living or dead, provided he be legally represented in the litigation, personally, or by an agent, an executor, an administrator, a syndic, or assignee, or by heirs.

We will now proceed to inquire into the sufficiency and effect of both the oral and written evidence introduced to show the error complained of, and to describe correctly the property in question.

We think that it establishes the following facts:

Willy Ward once owned a tract of land in the parish of Morehouse, known as the "*Willy Ward Plantation*" or "*Ward Place*," which was community property between him and his wife, and on which he resided. Years after his death, viz: in 1868, his widow, who had qualified as tutrix of their minor children, became indebted to them, and, at the time of settlement with them, gave them in payment of their claim against her, her undivided half in the whole land in Morehouse parish, and in other lands in another parish, the description of the land in the first named parish, including that of the land claimed by plaintiff, as being in section 21. In 1872, in the belief that he was then the sole owner of the property in Morehouse parish, G. C. Ward sold a portion of it to W. M. Carpenter, his sister's husband. In 1873, he sold to plaintiff real

estate in the same parish, the specific description of which would correspond exactly with that claimed and described in the petition, as having been sold and acquired, but for the designation of the section, which is therein said to be No. *20*, while it should be No. *21*.

The evidence also shows that Levy was in possession of the land sold to him by Ward. The leases which he made to the latter in 1876 and 1877 necessarily imply that fact and identify the land. There were ninety odd acres of land in cultivation on the plantation which was intended to be sold and bought, and as many there were on the "Willy Ward Plantation" or "Ward Place," leased by Levy to Ward, and which was expressly identified in one of the leases with the land sold on November 15th, 1873, by Levy to Ward. Ward and his sister, Mrs. Carpenter, subsequently, in 1875, effected a partition in kind of the lands which they then owned and held in indivision, and which, several years previous, they had agreed to divide between themselves. By reason of that partition, while he acquired title to her share in the land in Morehouse parish, Ward transferred to her all his rights in and to other lands. The lease of 1876 shows that the plantation, the object of the contract, contained about ninety acres in cultivation. There were but 45 $\frac{50}{100}$ acres under cultivation on the land described in the deed of Ward to Levy, and 49 $\frac{6}{100}$ cleared and cultivated on the land omitted from the description in the deed, and comprising, with the portion described, the "Willy Ward Plantation," or "Ward Place." There is found in section 20 the same quantity and description of land, but it is wild and unimproved. It is disconnected from the Ward Place, being more than a mile distant from it. Lots 2 and 3 thereof were never owned by G. C. Ward, or any of the family, or of the name.

It is material to note that the leases made in 1876 and 1877 by Levy to Ward, were executed after the act of partition had taken place (in 1875) between Ward and Mrs. Carpenter. It is by those leases that the land in the deed of 1873 was identified with that leased. Ward's written admissions of the identity of the land, though made after the date of the deed, after he had ceased to own the property, not being charged and proved to have been made in error, were conclusive upon him, and actually bind his legal representatives in the same manner.

The testimony of the surveyor, coupled with an examination of the plat which he made, and which is in the original in the transcript,—independent of the testimony of the plaintiff,—satisfies us fully that the clerical error charged is clearly established, and that the plaintiff is entitled to have it corrected.

It is impossible to suppose that Ward intended to sell and Levy proposed to purchase land to which the former could give and the latter receive no valid title. The rational conclusion which we reach is, that.

the land described in the deed of November 15th, 1873, is that which composed the original "Willy Plantation," or "Ward Place," after taking from it the portion sold by G. C. Ward to W. M. Carpenter, in 1872, and that the number of the section mentioned in the deed of 1873, as being No. *20*, is and should be deemed as being No. *21*, of township No. 22, in Morehouse parish.

We cannot relieve the intervenor from the judgment appealed from, first, because the matter in dispute, under the intervention, is not appealable, and second, because, even then, the succession of Hope had no interest justifying the intervention, for the reason that the right asserted can in no manner be affected prejudicially by the judgment in this case on the issue of title between Levy and the estate of Ward to the land on which the succession of Hope claims to have a judicial mortgage, resulting from the inscription before Ward's death of a money judgment against him.

We find no error in the judgment appealed from.

It is, therefore, affirmed with costs.

Mr. Justice Todd having been of counsel, recuses himself.