No. 1806
Second Circuit Appeal

------

GEORGE ARTHUR GAINES v. JESSIE TIDWELL AND HUSBAND

------

(March 30, 1925, Opinion and Decree)

------

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Evidence—Par. 256.**

It is well settled that parol evidence is admissible to show error in the descriptio loci et descriptio personae in the data contained in an act concerning real estate, namely, to show that the instrument was not made the actual depository of the intention of the parties. If such was not the rule of law, no erroneous description of real estate acquired or sold could ever be established and rectified as against an author or purchaser in bad faith, or against his representatives, in the event of his death.

2. **Louisiana Digest—Estoppel—Par. 30, 38, 51.**

Where plaintiff in an action for ownership and possession of land failed to claim a tract east of the line stepped off, leaving that particular tract in possession of his vendor and also failed to put improvements on that part or object to his vendor's putting improvements thereon; he is estopped from claiming that tract, even though the deed erroneously shows plaintiff as the record owner.

Appeal from the Second Judicial District Court of Louisiana, Parish of Webster, Hon. Robert Roberts, Judge.

This is a suit claiming ownership of land coupled with an injunction enjoining defendants from interferring with his own-

ership. There was judgment dismissing plaintiff's suit and dissolving injunction.

Plaintiff appealed. Judgment affirmed and recast.

L. K. Watkins, of Minden, attorney for plaintiff, appellant.

Stewart & Stewart, of Minden, attorneys for defendant, appellee.

CARVER, J.   On October 15, 1918, Frank Fleeks executed in favor of plaintiff a notarial act conveying to him a certain tract of land described in the deed as:

"All that part of the SW¼ of SW¼ of Section 33, Township 19 North, Range 10 West, south of the Shreveport Branch of the Louisiana & Arkansas Railway in Webster parish, Louisiana, containing 18.00 acres, more or less."

The vendor at some time; not exactly shown by the evidence, stepped off a line dividing the tract into two nearly equal parts and placed, or had placed, iron stobs at the north and south ends of the line so stepped off.

There was on the east side of the tract a little patch of an acre or an acre and a half under fence and in cultivation.

Plaintiff built a house on the west side of the tract and fenced up some of it. Some time thereafter he moved his fence, or built a new one at or near the line stepped off by Fleeks. The little patch on the east side of the tract remained in possession of Fleeks, under whose authority it was cultivated by Jessie Tidwell during the years 1919, 1920 and 1921, and to the time of Fleeks' death on February 25, 1922. Plaintiff never sought to dispossess Fleeks or Tidwell of this little patch during the lifetime of Fleeks, nor does the evidence show that he ever exercised any dominion over this patch or any of the land east of the line stepped off or asserted any claim thereto, except that he executed a mortgage on February 10, 1919, in favor

of S. T. Anders and J. F. Baker on the entire tract, describing it precisely as it was described in his deed from Fleeks.

At some time after plaintiff bought, Jessie Tidwell built a fence also near and to the east of the line stepped off, and afterwards built a house on the little patch above mentioned. The fence built by Tidwell did not run across the entire tract but ran part of the way and, as we understand the evidence, a line of posts was erected continuous with the fence and extending further and perhaps entirely across the tract.

On April 24, 1922, about two months after the death of Fleeks, plaintiff brings this suit, claiming ownership of all that part of the forty above described lying south of the railway and alleging that Jessie Tidwell and her husband had disturbed his ownership and possession thereof by erecting a house, cutting timber and claiming to own the land. He sued out a writ of injunction enjoining them from interfering with his possession and use of the property and from further acts of trespass thereon.

Defendants allege in their answer that the deed from Fleeks to plaintiff contained an error in describing the land intended to be conveyed; that according to the intention of both the vendor and vendee only the west eighteen acres was mutually intended to be sold and bought. They further allege that Fleeks donated the east thirteen acres of the tract south of the railway to Jessie Tidwell during his lifetime and also willed it to her at his death and that Jessie, under the donation, took possession of the land and erected a house thereon and cultivated same with the knowledge and acquiescence of plaintiff. They allege, further, that plaintiff agreed with them on a division line between the two properties. These acts they plead as an estoppel against plaintiff.

It is clear that the deed by its terms conveys not merely eighteen acres of the forty in question but all that part of the forty lying south of the Shreveport Branch of the Louisiana & Arkansas Railway; but under the allegation that the deed is erroneous in describing the property intended to be conveyed, we think the defendants had a right to show by parol what was so intended, and the ruling of the District Judge permitting parol testimony of plaintiff's declarations and conduct going to show his intention was in our opinion correct.

III Louisiana Digest, 223. Also Levy vs. Ward, 33 La. Ann. 1035, in which the court says:

"It is well settled that parol evidence is admissible to show error in the descriptio loci et descriptio personae in the date contained in an act concerning real estate, namely, to show that the instrument was not made the actual depository of the intention of the parties. If such was not the rule of law, no erroneous description of real estate acquired or sold could ever be established and rectified as against an author or purchaser in bad faith, or against his representatives, in the event of his death."

Citing many authorities.

E. L. Stewart says (page 19):

"Q. Do you know how long Jessie Tidwell and husband had been in possession of the east half of the southwest quarter of southwest quarter?

"A. No, sir, I do not know; I know for quite a good while, and George Gaines had often told me that he owned the west eighteen acres of that tract. I have seen him plowing in there. He never did claim the east side until after old man Frank died. I know that absolutely, to me."

U. O. Ashby (page 28):

"A. No, sir, George Gaines just told me that he bought eighteen acres from Frank Fleeks, that adjoined his."

Gaines owned the southeast quarter of the southeast quarter of Section 32, lying immediately west of the southwest quarter of southwest quarter of Section 33.

Plaintiff made two oil leases of the west eighteen acres but did not include the east part of the forty. He gives a false explanation of his reason for not including the whole tract. He states (page 8):

"Q. You leased him eighteen acres?
"A. Yes, sir, and the reason was I did not want to lease all, did not want them to interfere with my house, that is the reason I did not lease the whole piece."

The truth is that the eighteen acres leased is the very land on which his house is situated.

He gives the same explanation again on page 60 as follows:

"Q. How much land did you lease to Jimmie Busbey?
"A. I leased like Mr. Crowson, leased in front of the house, not to bother around the house."

Jessie Tidwell swears that plaintiff, himself, made the land between their properties; that he never objected to her building the house; and that he asked her to sell him the tract claimed by her and also asked her to lease it to him. He denied all this, but gives no satisfactory reason why he permitted her to erect the fence or house; and we are satisfied that he made no real objection to her doing so, if any at all.

After having stated that there was no lane at all between the properties, and then having modified that to the extent of admitting that there was a lane part way, he states as follows:

"Q. Now, what kind of a place these witnesses call a lane, what is that?
"A. Just post there, what I call a lane. is where there are two fences, some posts there, nothing but posts.

"Q. What did you have to do with putting this fence there, that is, these posts?
"A. I did not put them there, But Tidwell put them there or Jessie Tidwell.
"Q. How far does the lane run, to the back of the land or just a little ways?
"A. The posts run the back side of the line where they drove the stob.
"Q. You had nothing to do with that at all?
"A. No, sir.
"Q. What objection did you make?
"A. I told them not to do so.
"Q. Did you have a fuss with her about it?
"A. No, sir, I did not raise a fuss.
"Q. How came you to let her build a house on the land?
"A. I could not help it without a fuss.
"Q. Did you object?
"A. Yes, sir, I objected and told Mr. S. T. Anders that he was furnishing the lumber for my land and I would not pay for it, that it was on my land."

He had previously stated (page 7):

"Q. You saw her stakes, you saw the iron stakes dividing the property up?
"A. No, sir, I seen Jessie drive stobs.
"Q. Did you see her drive them?
"A. Yes, sir, I seen her with witnesses.
"Q. Who all were there?
"A. Myself, my wife and Steve Fleeks and my mother-in-law.

\*　\*　\*　\*

"Q. What did you do when you saw her driving the stobs?
"A. I objected, told her not to do so.
"Q. Now was that before or after Frank Fleeks died? When she drove the stobs?
"A. After he died.
"Q. When she was cultivating this property in 1920, and you saw her, why didn't you stop her?
"A. Well, I will tell you why, when the property was sold there was a patch of about an acre that Frank Fleeks always worked and he told her if she would finish it out he would let her have half of it."

Neither his wife nor his mother-in-law testified in the case, and Steve Fleeks, though a witness and a very willing one, was not asked about this particular matter. The S. T. Anders mentioned was

also a witness, but he was not asked about any objection made by plaintiff. In view of his subsequent willingness to take drastic action against defendants in court by way of injunction and out of court by way of going into her enclosure, plowing up the land therein and nailing the gates up, as he admits himself (page 61), we cannot think the reason he gives for not more strenuously objecting to her making the improvements a candid one. In fact, we believe her testimony that he did not object.

We think the plaintiff's failure to claim the tract east of the line stepped off and leaving it in possession of his vendor, in apparently confining his claim to the west part, as shown by his leases; the untrue explanation he gives of his so confining it; his failure to object to her putting in the improvements, and the unsatisfactory reasons he gives for such failure, are all inconsistent with the theory that he intended to buy all of the forty south of the railway, and consistent only with the theory that he only intended to buy the west eighteen acres.

The District Judge, over plaintiff's objection, also allowed parol testimony to prove declarations of Fleeks. We think this was error.

These declarations were hearsay. But Fleeks' remaining in possession of that part of the land east of the line he stepped off, and staked, and his giving and afterward willing it to Jessie show that his intention was to sell plaintiff only the west eighteen acres.

But aside from this, we think the plaintiff's act in permitting defendants to make valuable improvements on the property east of the dividing line under a claim of right and without objection from him, estops him from claiming it.

21 Cyc. 1160, paragraph 163, verbo Estoppel, lays down the following rule:

"One who with knowledge of the fact and without objection suffers another to make improvements or expenditures on or in connection with his property or in derogation of his rights under a claim of title or right will be estopped to deny such title or right to the prejudice of that other who has acted in reliance on and been misled by his conduct, and a fortiorari is applicable where the party against whom the estoppel is claimed not only makes no objection but assists in making the improvements."

Plaintiff objected to proof of the verbal donation and also to proof of the will. Of course a verbal donation is not sufficient to transfer property and is not admissible to prove title. Of course, too, a will cannot transfer property sold by the decedent during his lifetime.

But the issue in this case is not whether defendants have a valid title or any title at all.

The question is, has plaintiff a title which he can urge against defendants. If not, it is no concern of his what sort of title defendants have, or whether they have any.

His deed, on its face, of course, covers the property, but under all the proof in the record we are satisfied it was not intended to cover it and therefore must be regarded as not covering it; and furthermore, he is estopped from claiming any more than the eighteen acres.

The judgment of the District Court simply dismissed plaintiff's suit and dissolved the injunction. Inasmuch as plaintiff claims, in his petition, the ownership of all that part of the forty lying south of the railway, this judgment might possibly be construed as meaning that plaintiff had no title to any of it. For the sake of greater clarity, therefore, we will recast the judgment so as to leave his title clear to the west eighteen acres which was intended to be bought and sold. As to this eighteen

acres, though, there is no proof that defendant ever claimed it and there was no necessity, therefore, for the injunction or the suit. We are also satisfied that the judgment was not intended to reject his claim to that eighteen acres. The recasting of the judgment, therefore, should not entitle appellant to the costs of the suit or even those of the appeal.

It is decreed that the judgment of the lower court be recast so as to read as follows:

It is decreed that there be judgment in favor of the defendants, Jessie Tidwell and B. Tidwell, and against the plaintiff, George Arthur Gaines, decreeing that the deed from Frank Fleeks to said Gaines of date October 15, 1918, was intended to cover and is therefore held to cover only the west eighteen acres of that part of southwest quarter of southwest quarter of Section 33, Township 19 north, Range 10 west, south of the Shreveport Branch of the Louisiana and Arkansas Railway in Webster parish, Louisiana, and that the demands of the plaintiff, so far as the rest of said tract is concerned, be and the same are hereby rejected and disallowed; and the injunction herein sued out is dissolved. Plaintiff to pay the costs of both courts.