## No. 8135.

E. N. PUGH, TESTAMENTARY EXECUTOR, ET AL. VS. MRS. MARY JANE CANTEY ET AL.

An onerous donation, when the value of the thing given does not exceed by one-half that of the charge imposed, is not subject to the rules prescribed for donations *inter vivos ;* and an action for its dissolution must be governed by the rules relating to ordinary contracts. Therefore, as in a suit for the rescission of a contract, in which the plaintiff must put, or offer to put, the defendant in the same position in which he was before the contract, in the case of an onerous donation, the donor or his representative, who seeks the rescission of the donation, must offer to return what he has received from the donee, as a condition precedent of the suit.

APPEAL from the Twenty-second Judicial District Court, parish of Ascension.  *Cheevers,* J.

---

*Pugh & Howell* for Plaintiffs and Appellants:

First—On the 21st of October, 1868, a donation *inter vivos* was made on certain express condi - tions and stipulations set out in the act by the late J. B. Futch to defendant, Mary Jane Cantey, of notes to the amount of $6256 98 made by John D. Cantey, her husband, and secured by vendor's lien and privilege on his property. (R. page 87). The principal and most essential condition of the donation was that the donee should pay annually to the donor, or in case of his death to Matilda Postian (who was a party to the act and accepted the stipulation in her favor), an amount equal to 8 per cent. interest on $6256 98, the principal and interest of the notes donated. These conditions were accepted by the donee, and it was agreed that on the faithful compliance by the donee of all the conditions of the act, that on the death of the donor and Postian, the beneficiary, that the notes should become the absolute property of Mrs. Cantey. Present suit, brought by executor and the heirs of Futch, to annul donation for non-fulfillment and non-performance of the conditions imposed on the donee. (Record, p. 1). C. C. 1559, § 3 ; 1523, § 2 ; 1524, 1526, 1527, 1568, 1569, Mac. v. 3, § 699 ; Demolombe, v. 20, page 506, § 575—512, § 576—527, § 597—528, § 598—523, § 590— .524, § 592—525, § 594—536, § 608, 610 ; 31 An. 634 ; 9 L. 503 ; 18 L. 16 ; 30 An. 723 ; 6 L. 99.

Pugh, Testamentary Executor, vs. Cantey et al.

Second—In 1876, compromise made between Postian and Mrs. Cantey, in which she bound herself to pay the amounts coming to Postian under the donation, subsequent to January, 1876. In 1878, Postian sued Mrs. Cantey under the donation for $1067 50, being balance due under compromise and the $500 in 1877 and 1878. (Record, page 113). To this suit, as a defence, Mrs. Cantey set up the nullity of the donation as being an effort, on the part of the donor, to force her to pay the debts of her husband (Record, p. 101), and that the donation has the resolutory condition. The District Judge held that the heirs of Futch had a right of action against Mrs. Cantey (Record, page 103) to dissolve the donation for the non-fulfillment of its conditions, that the donation was absolutely null and void ; but as the heirs of Futch are not parties to the suit, it was simply decreed and adjudged, "for the reasons above stated," that judgment be entered in favor of defendant and that the plaintiff's petition be rejected. (R. page 105). Since this judgment Mrs. Cantey has never paid one cent to Postian.

The legal effect of this judgment was to annul and set aside the donation in its entirety. The present suit was necessary, under article 1566, C. C., to have the donation judicially decreed null between the proper parties. 30 An. 958; 31 An. 238; C. C. 2045, 2046; Demolombe, v. 20, page 523, § 590, et seq—532, § 605—pp. 512, 506, 535; Mac. v. 3, § 704; Id. 4, page 635.

Third—The "reasons" for judgment form an important part thereof, especially when the decree is expressly stated to be based and founded on these "reasons." Constitution 1868, Article 80; 14 An. 435; 2 An. 60, 907; 18 An. 418, 193, 371; 21 An. 409; 12 L. 144; 19 An. 525; Henn. page 727, No. 1, 9, 728, No. 8; 16 An. 365. "Sublato fundamento cadit opus." Judgment indivisible, 32 An. 699; 1 An. 305; 23 An. 441; 28 An. 744, 761; 28 An. 202. Strike the "reasons" from the judgment and you deprive it of all life and vitality. The reasons and decree in this case are inseparable. 4 An. 150; 18 An. 65.

Fourth—Mrs. Cantey having successfully set up as a defense, the nullity of the donation, and having had the court at her instance and request, to relieve her from the payment of a large sum of money by reason of this nullity, is now forever estopped and debarred from claiming any rights and benefits under the donation. She was, as soon as she filed her answer in suit No. 1941, a trespasser, and by that answer judicially renounced the donation. The bill of exception to any evidence by her was well taken. (Record, page 135). 22 An. 369; 28 An. 121, 140, 462, 163; 31 An. 104, 256, 470, 565; 2 An. 269; 4 An. 416; 22 An. 429; 18 An. 136; 7 An. 612; 5 An. 22; 23 An. 766; 26 An. 706, 487, 631, 366; 14 An. 140; 32 An. 501, 949. 967; 29 An. 171; 3 R. 134; Henn. 519, No. 18; 4 An. 150; 23 An. 784; 15 An. 55; 27 An. 351, 632.

Fifth—Matilda Postian, in whose favor a stipulation was made in the donation, had a perfect right to sue Mrs. Cantey for a specific performance, and it was only because the District Judge considered the donation absolutely null and void, that judgment was given against her. Why Postian should be or can be a plaintiff in the suit, we are at a loss to know; her only action was for a specific performance. C. P. 35; C. C. 1890, 1902; Demolombe, v. 20, page 498, § 568, page 527, §597; Ibid, 81, § 90; 30 An. 723; Henn. 1029, No. 1, 4, 15; 5 R. 243; 31 An. 238, 62; 22 An. 362.

A suit to specifically enforce a contract does not bar a subsequent one for its rescission, but it is by law a preliminary step to be taken, and puts the party "in mora." C. C. 1911—1912; 15 L. 75; 3 An. 208.

Sixth—Not necessary that all the heirs of Futch should be parties to the suit. The right to recover property belonging to the deceased is indivisible. 9 L 492, 504; 18 L. 16; 32 An. 853; 31 An. 76; 3 L. 135, 150; 6 An. 235; 26 An. 367: Henn. 1115, No. 3; 5 L. 430.

Seventh—Plaintiffs are the heirs of Futch. (See evidence, pages, 46 to 57 and 21 to 86, particularly page 116). 20 An. 97; 3 L. 33; 2 An. 944; 7 An. 253; 26 An. 26; 30 An. 1390; Henn. 500, No. 3; 6 L. 463; Greenleaf on Evidence, §107, 106; Wharton on Evidence, § 1297, 83, 84.

Eighth—WANT OF TENDER. What is paid out under an *onerous* donation is a debt paid. The heirs received nothing, and Mrs. Cantey was simply temporarily carrying out her solemn agreement. Demolombe, v. 20, page 506, 510, 511, 512.

"Non seulement il ne pourrait pas exercer la repetition des charges déjà pas lui acquitéu dans le passé; ce qui *ne saurait etre conteste par personne.*" Ibid, 512; Mac. v. 3, § 700; C. C. 1558, 1569.

Ninth—Article 1519. Impossible conditions, those which are contrary to the laws or to morals, reputed not written, has no application to onerous donations. Consent is *indivisible*, and the express condition on which the donation was made, was that the donee should do certain things—the performance on her part of those "conditions" was the juridical cause of the donation. Mac. v. 3, page 384, § 480, v. 4, page 343, § 5; Dalloz & Vuds, page 1021, Nos. 36, 42, 43, page 672, Nos. 3, 9, 10, 12, 13; 4 An. 150; 1 An. 305; 23 An. 441; 12 R. 87; Mac. v. 3, page 580, § 700; 18 An. 65; 1 An. 111; 27 An. 441; 28 An. 202, 199, 761; 30 An. 359; 32 An. 757; 26 An. 27; 1 R. 330; C. C. 1523, 1527, 1559, 1758, 2045, 2046; 29 An. 407; 13 An. 117; 30 An. 216; 28 An. 199; Demolombe, v. 20, page 496, § 563; 27 An. 351; 30 An. 359.

### R. N. Sims for Defendants and Appellees:

First—The donation from Futch to Mrs. Cantey is not a real donation. It is burdened with heavy charges. "The onerous donation is not a real donation when the value of the object given does not manifestly exceed that of the charges imposed on the donee." C. C. 1524.

"In consequence the rules peculiar to donations *inter vivos* do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services." C. C. 1526; 3 An. 230.

"The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals." C. C. 1527. The charges imposed in the act of donation are equal to about fifteen per cent. interest on the amount of the capital of the notes donated—much more than they were worth.

"Donations by which charges are imposed on the donee, can never be reduced below the expenses, which the donee has incurred to perform them." C. C. 1514.

The so-called donation of 21st of October, 1868, was a contract, and is subject to the rules governing ordinary commutative contracts.

"It is no more a real donation than an act would be by which one of the parties made an irrevocable donation *inter vivos* of an immovable to the other party, who, in return, made to him a similar donation of the price. It will not be contended that a contract of that kind could be avoided by the subsequent birth of children to the donor, nor on account of the ingratitude of the donee. Compromises may assume any form, and simple obligations to do or give may be shown, by other evidence, to be the consideration of them." Troplong, Transactions, No. 34; 3 An. 230.

"Le droit de retour établi en faveur de l'ascendant donateur par l'art 747 C. Civ., ne peut être exercé à l'égard des donations qui, par suite des charges dont elles sont accompagnées, peuvent être qualifiées de contracts a titre onéreux." Rossignol, 3, 76; Dalloz, Jurisprudence Générale, 1849; V. Donation.

"L'acte par lequel une mère donne á son gendre et á sa fille conjointement des immeubles, à la charge de la nourrir, de la loger et de l'entretenir sa vie durant, doit malgré sa dènomination, être considéré, comme un contrat onéreux et aléatoire, si les charges imposées sont au moins l'équivalent de la valeur des immeubles * * * qu'il en résulte qu'en consentant á se charger de cet entretien, les conjoints Reyss ont grévé la communauté d'une obligation dont la durée etait indéterminée et qu'en obtenant en échange les immeubles dont il s'agit, ce n'est pas une donation qu'ils ont reçue mais un contrat onéreux et aléatoire qu'ils on signé. (Dame Reyss, C. Syndic Reyss); Dalloz, Jurisprudence Générale, 1851.

In the case last cited, it appeared that the value of the property donated did not exceed 400 or 500 francs, and that the charges amounted annually to about 100 francs.

Second—The exception of want of tender was properly sustained. Since the date of the act

of 21st of October, 1868, Mrs. Cantey has paid to Futch and Postian the sum of $3599 14, exclusive of the expenses incurred by her for the erection of the buildings for the donor's use. The act of 21st of October, 1868, being an ordinary commutative contract, the plaintiffs were bound to tender these sums to Mrs. Cantey as a condition precedent to their right to bring this suit.

"The dissolving condition is that which when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed. It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place." C. C. 2045; 24 An. 539; 21 An. 514; 23 An. 354.

"A party demanding the rescission of a contract must return or offer to return the consideration received by him. It is a settled principle in courts of equity, that relief will never be extended to a party against his own contract, without exacting from him strict justice to his adversary. This is a condition precedent to be heard." 21 An. 425; 3 N. S. 466; 4 La. 198; 19 La. 283; 2 Rob. 180; 5 Rob. 65; 6 Rob. 450; 4 An. 562; 2 An. 379; 9 Rob. 306.

"He who seeks equity must do equity. So, in all actions of rescission, the party seeking relief must first offer to restore his adversary to the situation he was in before the contract. An offer of restitution or an offer to perform his part of the obligation must be alleged and proved by plaintiff as an indispensable preliminary in an action to rescind a commutative contract." Hennen 1020, and authorities cited.

Third—This suit is based on the allegations that Mrs. Cantey has absolutely failed to fulfill any and all of the conditions attached to the donation. No reference is made in the petition in this case to the judgment of the court in the suit of "Matilda Postian vs. Mary Jane Cantey," to enforce a specific performance of ONE of the conditions. Mrs. Cantey has shown that up to the 1st of January, 1876, she paid $3599 14 to Futch and Postian, besides the sum disbursed by her to provide a comfortable home for them. Postian sued to enforce one condition. Mrs. Cantey set up as a defense that she was without means and under the law, she could not comply with it. She could not sue her husband, and the notes were not, and never had been in her possession or under her control. On these issues judgment was rendered in Mrs. Cantey's favor. Matilda Postian acquiesced in the judgment and it has become *res adjudicata*.

The court decided that that particular condition or charge, was contrary to law, and impossible of fulfillment and must be considered as not written. C. C.

This was the only lawful judgment which the lower court could have rendered in favor of defendant on the pleadings in that case.

The position assumed by the plaintiffs in their brief, that the judgment in the Postian case estops Mrs. Cantey from setting up any rights under the donation now, is palpably untenable. That judgment which has the force of *res judicata* rather estops the plaintiffs from urging the non-compliance with that condition as a ground for the rescission of the donation.

The opinion of the judge in the Postian case, is paraded as conclusive of the absolute nullity of the donation.

The plaintiffs are in error. The remarks of the judge so far as they went outside of the record and the pleadings, were mere *obiter*.

"The reasons for judgment form no part of the judgment itself, though they may be consulted to explain an ambiguity. The thing adjudged will be found, not in the opinion pronounced, but the decree rendered." Hennen, 728, No. 15; 10 An. 261, 640; 12 An. 736.

"Isolated expressions cannot control the decretal force of a formal judgment."

The reasoning of the court *arguendo* is less to be regarded than the final conclusion announced. Hennen, 726, No. 7; 14 La. 445; 19 La. 318; 6 R. 208; 10 An. 352.

The pleadings and facts must be separated from the judgment to determine it; and all recitals in the opinion are not to be considered as approved by the court. 18 La. 12.

The decree alone indicates the decision. 14 An. 764.

" *Res judicata* is not to be decided by the points raised in argument, but the issues raised in
the pleadings." 7 N. S. 430.

A judgment has the force of *res judicata* as to all matters and demands set up in the plead-
ing. 17 La. 92.

In the Postian case, Mrs. Cantey did not set up the nullity of the donation. She only
claimed, as a defense to the action, that her husband owed the interest, and that the pay-
ment thereof could not be enforced as against her. In doing so she merely invoked the
shield of the law's protection.

"A wife cannot, under any circumstances, become surety for her husband, and if she be
really such, the form of the contract will be disregarded." 2 N. S. 39; 4 N. S. 388; 5 N.
S. 431; 7 N. S. 252; 4 R. 508.

"A wife whether separated in property or not, cannot bind herself for her husband, nor con-
jointly with him for debts contracted by him before or during the marriage." C. C. 2412;
1 R. 218; 4 R. 114; 7 R. 357; 2 An. 3; 12 An. 725; 14 An. 700; 12 An. 852; 14 An. 419.

" The law prohibiting a wife from binding herself for her husband's debts is to a certain
extent one affecting public order." 9 La. 589; 14 An. 169.

Fourth—The plaintiffs, especially the executor, are absolutely without right to stand in
judgment.

Matilda Postian, the beneficiary under the donation, and the only party in interest besides
Mrs. Cantey, comes into Court, denies all the allegations of their petition, and prays that
their suit be dismissed with costs.

The theory of the learned counsel is, that plaintiffs are suing *for the use of Matilda Postian*, ·
but her pleadings do not indicate that she is inclined to favor that view of the situation.
She is provided with the comforts of a home, and she testifies that Mrs. Cantey has
always treated her with kindness and given her food when she has asked for it. Evi-
dently she prefers to bear the ills she has than fly to others she knows not of.

Fifth—Upon no consideration of justice or equity can the plaintiffs' suit prevail. Mrs.
Cantey has never received one dollar of benefit or advantage under the so-called
donation. She cannot use the notes; not a cent of interest has been paid on them; she
cannot sue her husband; she has paid out her funds to Futch and Postian until all her
means have been exhausted, when the arbitrament of the law is invoked against her to
enforce a specific performance, with the result already mentioned. The executor has
mistaken his remedy. It does not behoove Mrs. Cantey to point a way out of his difficul-
ties. Futch received all that was stipulated in his favor in the act of donation, and his
heirs, if his heirs they be, must make restitution to Mrs. Cantey before they can be heard
to assail her rights under it. They stand in the place of Futch. He, if living, could not
retake the notes of Mrs. Cantey's husband, swelled in amount by the accumulated
interest of fifteen years, and still be permitted to retain the large sum of money received
from her. Neither law, justice or equity could sanction a result which would enable him
thus to enrich himself at the expense of another. If he sought equity he must do equity.
The temple of justice of our country is the House of God.

---

The opinion of the Court was delivered by

Poché, J.   This is an action to annul a donation *inter vivos* for non-
compliance with the conditions imposed on the donee, and grows out of
the following facts:

On the 21st of October, 1868, J. B. Futch made a donation to the de-
fendant of certain promissory notes amounting together to some $6256,
held by the donor and due by J. D. Cantey, defendant's husband. By
the act of donation the notes were to be placed in the custody of a third

party, and were to be delivered to the donee, as her absolute property, on her fulfilling certain conditions, which were in substance as follows:

To provide for the donor and for a faithful servant of his, named Matilda Postian, a comfortable home, by building a house and out-houses of stipulated dimensions, on the property of the donee's husband, and to provide said home during the lifetime of the donor and of his servant, to both of whom the donee was to furnish the subsistence of life to an amount not to exceed annually the interest at 8 per cent. on the amount of the notes donated; and that on the death of the donor and of his servant, and after a full compliance on the part of the donee with the conditions thus imposed, she. would be entitled to the full possession and ownership of said notes.

The donor died in 1872, but his servant is yet living. In his will, the donor entrusted E. N. Pugh, one of the plaintiffs herein, with the execution of his will, particularly charging him with the protection of his servant's rights under the donation.

Charging that the donee had violated the conditions of the dona-tion, but particularly in failing to furnish, since the year 1876, either supplies or money to the servant Postian, the executor, joined by two persons alleged to be legal heirs of J. B. Futch, prays that the donation be dissolved, and that the notes be delivered to them.

Among other defenses, Mrs. Cantey excepts to plaintiffs' action on the ground that the latter have failed to reimburse or tender to her, the value of supplies and the money given and paid by her to Futch and to the servant Postian since the date of the act of donation, which supplies and money amount to the sum of $3599 14; and that such payment or tender was a condition precedent to plaintiffs' right of recovery.

This exception, which was tried with the merits, was maintained by the lower court, and plaintiffs appeal.

The proper solution of the question presented by this exception depends upon the nature or correct definition of the act which is sought to be annulled. It purports to be a donation of certain promissory notes, but is unaccompanied by the delivery of the objects given, which are placed in the custody of a third party, until the happening of an uncertain event, and the fulfillment of conditions depending, in a measure, upon the happening of the event; and it contains so many novel dispo-sitions and conditions that a proper understanding of the instrument is not free of some difficulty.

But a careful examination of the act fully satisfies us that the primary object or motive of J. B. Futch in the contract was, by means of the notes held by him, two of which were secured by mortgage and vendor's lien on the property of defendant's husband, to secure to him-self and to his faithful servant, during their respective lifetime, a com-

fortable home and assured means of subsistence or living. The measure of the pecuniary charges imposed on the donee depended exclusively upon the number of years to be yet allotted to Futch and his servant; the test of the donee's fidelity in complying with her obligations being definitely fixed at the death of the last survivor of the two beneficiaries under the act. In accepting the future ownership of the notes in question, Mrs. Cantey contracted a pecuniary obligation of an indefinite amount, the precise figure of which was concealed in the womb of time.

Under the stipulations agreed to, the amount to be contributed annually was to have reached at least five hundred dollars; and thus, if either beneficiary had lived twelve years from the date of the act, the pecuniary charges imposed on the donee could have reached the full value of the property given.

It appears from the record that, notwithstanding Mrs. Cantey's alleged short-comings in the execution of her obligations, she has disbursed under the terms of the act the sum of $3599 14 in eight years, exclusive of the cost of building the home required by the act.

Plaintiffs themselves not only admit, but allege that the "*governing motive*" of Futch in making the donation was to secure to himself during his lifetime, and after his death to his servant, Matilda, during her lifetime, a comfortable living.

Viewing the contract under the construction most favorable to plaintiffs, we are irresistibly led to conclude that the value of the object given in the act did not manifestly exceed that of the charges imposed on the donee, and that, therefore, it was an onerous and not a real donation. C. C. article 1524; 3 An. 230; Dalloz, Jurisprudence Générale, 1851, case of Reyss.

Hence, as an onerous donation, it is not subject to the rules peculiar to donations *inter vivos*, C. C. article 1526; and the action for its dissolution must be governed by the rules relating to ordinary contracts. 31 An. 634; Marcadé, vol. 3, § 704.

Under this rule every commutative and synallagmatic contract implies the resolutory condition, under which one of the parties has the right to demand the dissolution of the contract for the non-performance of an obligation by the other, and under which matters are placed in the same state as though the obligation had never existed. C. C. Arts. 2045, 2046.

This rule has been uniformly interpreted by our courts to require that a party demanding the rescission of a contract must return or offer to return the consideration received by him, and that this is a condition precedent to his being heard. 21 An. 425, Latham vs. Hickey; 6 R. 450; 5 R. 65; 2 R. 180: 4 La. 180; 2 N. S. 466.

Proceeding to apply this principle to the present case, we are met

by a record which shows that defendant, after disbursing under the contract in favor of the donor and his servant considerable sums of money, and having yet reaped no benefit or advantage under the donation, is now sued with a view to cut her off from all claim to the property given to her, under conditions faithfully executed by her during eight years, as admitted by plaintiffs themselves; and that they have not returned, or offered to return, the sums disbursed by her in favor of the beneficiaries under the onerous donation.

Law, justice and equity alike require that the dissolution of this contract be preceded by at least an offer on the part of plaintiffs to place Mrs. Cantey in the position which she would occupy had the contract never taken place.

Plaintiffs urge that, for two reasons, defendant cannot invoke the benefit of this rule.

1. They aver that they, the executor and the two alleged heirs, have received nothing from the defendant, and that, therefore, they cannot be held to the reimbursement of funds never received by them.

They evidently lose sight of the position which they assume in their pleadings, in which they act in lieu and stead of the deceased, seeking to enforce rights which he alone, if living, could demand; and seemingly forget that, as his legal representatives, they are amenable to all the defenses which could have been urged against him as plaintiff in a similar proceeding.

2. They urge that Mrs. Cantey has debarred herself from claiming any right under the contract by her judicial admission in a suit filed against her in 1878, by Matilda Postian, seeking to enforce the specific performance of the conditions of the donation. They charge that, in her answer to the suit, Mrs. Cantey, urging the impossibility of the conditions imposed by the donation, alleged the nullity of the same, and that on the issue thus raised and for the reason of such nullity, the judgment rendered in the case, which is now final, rejected plaintiff's demand. They therefore urge that defendant is estopped from denying the nullity of the donation, thus leaving nothing for the Court to do in this case but to judicially declare said nullity. Hence they have reserved a bill of exception to the ruling of the district judge in admitting, over their objection, evidence offered by defendant in proof of the amounts disbursed by her under the contract. A careful inspection of the record in that Postian suit fails to produce on us the impression suggested by plaintiffs. In her answer defendant merely sets up her inability to pay the amounts demanded of her, for reason of her want of funds, growing out of her legal inability to enforce on her husband payment of the interests accrued on his notes and remaining unpaid. True, the judge,

in his reasons, strongly intimates the nullity of the contract; but he clearly says that such is not the issue before him, and in his decree he merely rejects plaintiffs' demand. He did not and could not decree the nullity of the act; and his judgment offers no impediment to the defense made by defendant in this case, which is not affected by defendant's judicial admission in the other suit. The evidence was properly admitted and supports defendant's allegations in her exception.

It is unnecessary to express any opinion on the other defenses invoked by defendant.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court, maintaining the exception of want of tender, be affirmed with costs.

Rehearing refused.