(44 South. 477.)

No. 16,493.

RUDOLF et al. v. COSTA.

(April 29, 1907. Rehearing Denied June 28, 1907.)

**1. CANCELLATION OF INSTRUMENTS—LIMITATION OF ACTIONS—A SALE.**

In an action to set aside a contract for want of consideration, plaintiffs do not sustain the cause they set up.

**2. SAME—A PRICE WAS PAID.**

There was a price. The term "annuity" is used in the act attacked. It is a sale of property for a stated consideration.

**3. SAME—FOUR YEARS' PRESCRIPTION.**

The contract, if there was lesion, is not null on that ground, as four years have elapsed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 336.]

**4. SAME — CONDITION PRECEDENT — RESTORATION OF CONSIDERATION—WANT OF TENDER.**

The purchaser had a right to the return of the cash installment paid by him. No tender of this amount was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Cancellation of Instruments, §§ 33–38.]

**5. SAME — VENDOR'S PRIVILEGE AND MORTGAGE.**

Had the purchaser not paid, vendors would have had the right, in accordance with the stipulations of the contract, to foreclose, or to exercise the resolutory condition, as in any other act translative of property.

**6. SAME — ALL CONDITIONS FULFILLED BY PURCHASER.**

The purchaser performed the promises he had made in accordance with the contract.

**7. SAME—PERSONS ENTITLED TO CANCELLATION—PARTICEPS CRIMINIS—DISPOSITION AS BETWEEN VENDORS.**

The declarations of the deed relating to annuity, aleatory conditions, and the disposition the vendors proposed to make of the proceeds of the sale cannot affect the rights of the purchaser, who was no party to these declarations, and if he had been, and the agreement between the parties, the two vendors, had been against public policy and good morals, the parties must be left where they placed themselves.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 684–689.]

**8. SAME—GOOD FAITH AND VALID TITLE.**

Plea of prescription also presents grounds which plaintiffs have not successfully met.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Theobald R. Rudolf and others against Adolph M. Costa. From a judgment for defendant, plaintiffs appeal. Affirmed.

Henry Denis, Edwin Howard McCaleb, and James Barkley Rosser, Jr., for appellants. Charles Ferdinand Claiborne, for appellee.

BREAUX, C. J. This is an action in nullity to set aside the sale of two town lots and to be recognized as owner and for rent of the property.

The grounds of action are that the defendant went into possession of this property without a just and valid title on or about the 1st day of July, 1901.

As well here mention that this suit was instituted in October, 1906.

Before taking up the grounds of plaintiffs' action, we will state, in reference to the facts, that defendant claims his title from John Langles, who held title from Adolphe Jean Lacroix and Eliza Legrange, his wife, per act dated the 15th day of April, 1890, to which we will have ample opportunity to refer again.

The property at one time belonged to the grandmother of plaintiffs, Eliza Legrange. They claim as forced heirs of their grandmother, who departed this life in New Orleans on October 18, 1902. They allege that they went into possession of the property after the death of their grandmother.

The grandmother was several times married, her first marriage was with Achille Fautrelle, her second marriage was with Robert Badon, her third marriage was with Paul Burget, her fourth marriage was with Denis Forissier, and the last was with Adolphe Jean Lacroix. Eliza Badon is the only child Mrs. Eliza Legrange ever gave birth to.

Eliza Badon was married to Dr. Theo. R. Rudolph in the year 1876. Of this marriage two children were born. One is Theobold

Robert Rudolph, born on the 14th day of May, 1877, and the other Gaspard, on the 16th day of October, 1878.

Theobold and Gaspard Rudolph are the plaintiffs.

Theo. R. Rudolph, father of petitioner, departed this life on September 14, 1878, and his wife died April 15, 1897.

Adolphe Jean Lacroix, the last husband of Eliza Legrange, died in November, 1892. Petitioners' grandmother, Eliza Legrange, was recognized as universal legatee and went into possession of the property and paid certain special legacies.

The act attacked, to which reference has already been made, entered into by Adolphe Jean Lacroix and his wife, Madam Eliza Legrange, with the late John Langles, recites that two of the properties described in the act belonged to Adolphe Jean Lacroix, being his separate property, and the other lots, eight in number, transferred, as before mentioned, by Mrs. Eliza Legrange, were her separate property.

In the deed of sale the property was described in full, and each lot was appraised. The total of the appraisement of these lots amounted to $29,000.

The consideration for the transfer (promised by John Langles) was an annuity, as declared in the deed, of $3,625, which he bound himself to pay during eight years. He paid the sum of $1,812.51, "the half of the first annuity," to use the word of the deed.

He also bound himself to pay to his said vendors or transferrors the sum of $1,800 on the 15th day of October, 1890.

This was, as declared in the deed, the second semiannual payment of the first annuity of $3,625.10.

He bound himself to pay each month thereafter the sum of $302.81. The installments (each) for that sum were made payable in 84 months. They were all paid at maturity by purchaser Langles.

He delivered, as representing the credit portion, 170 notes signed by himself, bearing 7 per cent. interest from maturity.

Eighty-five of these notes, representing the said installments, were made payable to Adolphe Jean Lacroix.

The remainder of these notes, to wit, 90, representing the annuities to be paid to Mrs. Eliza Legrange, similarly secured, were handed over to her.

The act between these parties—that is, act of April, 1890—sets forth with some particularity the terms and conditions agreed upon, and the usual stipulations of mortgage and vendor's privilege.

It was stipulated that, in the event of Mr. Lacroix's death, payment of all the notes was to be made to his widow, and, in the event of her death occurring prior to her husband's, $50 per month were to be paid to her husband, a disposition she declared that she would confirm in her last will.

The act contains the further stipulation that, in the event of the death of both of these parties before the maturity of said notes, Langles was to be released from paying any of the unmatured notes thereafter.

The gist of plaintiffs' complaint in the attack on this act is that there was no price; that the asserted consideration did not constitute a price, and in consequence there was no sale; that the consideration of the annuity was less than the revenues of the thing sold; that the purchaser has not disbursed anything; that there is no existing sale; that the contract is aleatory. The contention was also that plaintiffs, being forced heirs, have the right to attack the contract as a simulation, and their action is not subject to the prescription pleaded of 10 years or less.

Plaintiffs' further complaint is that the contract is invalid because it contains reciprocal donations between married persons, in violation of article 1751 of the Code; that the act is also a nullity because it con-

tains stipulations with regard to successions not devolved; that it is against good morals because it is to the interest of each of the spouses that the other should die first; and that it was to the interest of the vendee that both should die.

With reference to John Langles, the purchaser, his property, including the lots before mentioned, was left by him at his death to his wife and child. They (his wife and child) perished several years ago in the foundering of the Bourgoyne off the coast of Nova Scotia.

At the succession sale of the widow of Langles and of his child, the properties were adjudicated to different persons at public auction. Two of the lots were adjudicated to the present defendant, Costa, and this is the property for which plaintiffs have brought this action.

The purchaser from Mrs. Eliza Lacroix and Adolphe Jean Lacroix—that is, John Langles—paid all of the installments and complied in full with all the terms and conditions of the act of purchase from said parties.

Plaintiffs aver that the so-called sale was merely a disguised donation, executed and delivered to the said Adolphe Jean Lacroix and Madame Eliza Lacroix, his wife; that the purpose of all the stipulations in the act was to disinherit and disappoint the expectations of her forced heirs after her death; that the act was a fraud and a simulation—and other allegations to the same effect.

Defendant met these grounds by pleading the exception of no cause of action, want of tender, and the prescription of different years, 10 and less than 10.

The district court sustained this exception and dismissed the suit.

Plaintiffs appealed from the judgment.

The contract was not without consideration. There was an amount paid in cash which in itself is proof of its reality. To that amount at least there was a binding agreement not to be overlooked in deciding the questions involved. This amount was paid absolutely as the cash portion of the purchase price. In making this payment, there was not the least reference made to the rental of the property. It was a separate, distinct act not in any way connected with the rent of the property. This amount has not been compensated by defendant's collection of revenues upon the property which he bought and revenues which accrued after his purchase.

In reference to this amount, even if there were illegalities in the contract, the heirs of the vendors are without right to have it decreed null, without first tendering at least this portion paid by the purchaser. Daquin v. Coiron, 6 Mart. (N. S.) 684; Id., 8 Mart. (N. S.) 625; Fortier v. Zimpel, 6 La. Ann. 54; Chambers v. Wortham, 7 La. Ann. 113; State v. Rebassa, 9 La. 305; Dupre v. Saye, 31 La. Ann. 450; Pugh v. Cantey, 33 La. Ann. 786; George v. Knox, 23 La. Ann. 354; Nash v. Muggah, 23 La. Ann. 540; Bland v. Lloyd, 24 La. Ann. 603; Sharkey v. Bankston, 30 La. Ann. 891; Brown v. Bouny, Id. 174; Blanton v. Ludeling, Id. 1233; Byrne v. Nat. Bank, 31 La. Ann. 81; Heirs of Burney v. Ludeling, 41 La. Ann. 627, 6 South. 248.

The foregoing point comes up before us in a preliminary manner, which might be taken as disposing of the issues of the case or as sufficiently sustaining the judgment to stop here; but, we have gone a step further, and considered the cause from another point of view.

There is a price, even if comparatively small, it is a price, a cash payment, we take it, made in good faith.

From that view point plaintiffs' case has nothing upon which to stand.

All parties to the suit agree that there is no lesion by reason of the fact that the contract is aleatory. If there is a price, however

small it may be, since there is no lesion, the contract is not illegal.

Learned counsel argue that in a suit of plaintiffs, by representation of their deceased grandmother, to recover property sold during her lifetime in consideration of an annuity for a term of eight years or for life, there is no price by reason of the fact that the rental of the property exceeds the amount of the annuity.

It is answer sufficient that, as there was an absolute sale, and not a lease, the question of rental is not to be considered.

We have reviewed some of the decisions of the courts and the doctrine laid down by the French commentators on the subject. These were referred to and dwelt upon in oral argument and in the briefs.

In the first decision of the French courts which attracted our attention, the vendor had sold two lots of land for a given price. Some time afterward he demanded the nullity of the sale, on the ground that it was made without price, or, that which is the same, for a rental for life inferior to the revenues of the immovable sold.

A valuation was ordered by the court. The experts appointed by the tribunal returned the amount of the revenues in excess of the price.

Judgment was rendered declaring the sale null as having been made without price.

The purchaser appealed and invoked that no limit is fixed by article 1976 of the French Code, and that the contract, being aleatory, it must be executed without regard to the price fixed by the parties.

The court held that, the sale having been made for a rental for life, under the articles of the French Code on the subject, taken together, this sale was good and valid without regard to the "vileness" or insufficiency of the price.

The judgment was reversed. Cour Royale de Rouen, 26 Mai, 1826; Journal du Palais, vol. 20, 516.

That was different from our case, as it involved a sale. In the cited case it involved rental. The reasons of the court, none the less, have some pertinency.

On appeal from this judgment to the Court of Cassation, it was decided that a question of fact only was involved, and that, as there was not a total want of price, the sale was valid, and the court rejected the appeal. Journal du Palais (Rollin) vol. 22 (Years 1828–1829), p. 869.

There is another interesting decision upon this subject and to the same effect. Same Ed. vol. 27, 1097.

It was asserted that the Court of Cassation, in the foregoing and in other cases regarding the issue in point, had vaccilated. Troplong took the court to task about it and reproached it with its inconsistency. He sharply criticised the difference which the court sought to establish in other decisions, including those referred to, between a very limited and a totally insufficient price and the absence of all price.

Duvergier's comments are to the contrary. He defended the annulling of a sale in default of price. Different from Troplong, he said that it was important to distinguish between those cases where there was only an insufficiency of price and those in which the sale was not real.

His comments sought to vindicate the court from the reproach of Troplong. His comment is that the court had always sought to distinguish where there was or was not a price, and if there was no price the contract should be annulled. Répertoire Générale. See Dalloz, verbo "vente," vol. 12, p. 756, § 553.

In the case before us for decision we have before stated that there was a price.

We have read and carefully considered

each of the authorities cited by learned counsel, and have not found that they differ materially from the foregoing, as shown particularly by Laurent, vol. 24, §§ 85, 86, cited by learned counsel for plaintiffs.

The contract is subject to be cured by the plea of four years' prescription pleaded. If there was lesion, it was barred by that prescription.

Learned counsel confidently cite Buford v. Collins, 41 La. Ann. 642, 6 South. 219.

We do not find that the decision expresses views contrary to those before expressed. It is in line with other authorities. The sale in that case was recognized as legal and binding, and the judgment of the lower court was affirmed.

To the same effect is Succession of Fortin, 10 La. Ann. 739.

It follows from the foregoing that plaintiff's plea of simulation is not sustained. It falls under the weight of reason and authority.

In thus concluding in regard to simulation, we will state, in that connection, that there is not the great difference in the value of the property which plaintiffs allege. The sale of two of the properties (made to defendant) show very little difference in value between the price paid as mentioned in the contract and the price realized at public auction.

Now, as relates to the legitime of plaintiffs, another ground of attack on the contract in question: They do not aver in what respect their interests as forced heirs has been affected nor the extent of their interest as forced heirs. They claim that they have an interest as forced heirs, and have a right to sue, and that is all.

In the case of Moore v. Wortelle, 39 La. Ann. 1068, 3 South. 384, the question was very similar to the one presented in this case.

The act of sale in the case before us, executed as it has been, is a complete act in itself. There is no invalidity lurking about it, nor any indication of any nullity apparent on its face.

Although the act attacked is not illegal on the ground urged, we will refer to the 10 years' prescription at issue only in passing. The title was one translative of property acquired in good faith.

We have seen that the sale was passed in 1890, and that the vendor died over 10 years after its date.

Upon the subject of 10 years' prescription, as applying, see Wykoff v. Miller, 48 La. Ann. 476, 19 South. 478.

There are two remaining propositions pressed upon our attention by able counsel.

The first is that the act attacked contains a mutual and reciprocal donation between married persons, in violation of article 1751 of the Revised Civil Code, enacted in the interest of public policy and good morals; and the other proposition is that the act violates article 1887 of the same Code, as it contains stipulations with regard to successions not yet devolved.

We take up the first proposition for decision.

It does not appear upon a close reading of the act that the wife was security for her husband, nor does it appear that the husband was greatly advantaged by this act. Moreover, the purchaser was not a party to the contract. If there was anything about it against public policy and good morals, the parties would have to be left where they placed themselves by their own acts; they would not be in a position to avail themselves of the machinery of the court to set aside what has been completely done.

The following is pertinent:

Eighty years and more ago, Lord Renyon, in the Court of King's Bench, emphatically said:

"No case can be found where, when money has been paid by one of the parties to the other upon an illegal contract, both being particeps

criminis, an action has been maintained to recover it back." Houston v. Haward, 8 T. R. 575; Meyer v. Farmer, 36 La. Ann. 785.

Above all, there is here no question about enforcing the conditions of the act between husband and wife, so that, if there is any irregularity or illegality about it, it is here not an issue.

The husband and wife have received the price under circumstances which leave to the heirs no ground upon which to stand against the purchaser who sought to obtain a title which the parties had a right to make.

We take up the next and second proposition of the two propositions just above stated, for decision; that is, that the parties sought to dispose of an interest in a succession of living persons.

This ground is not sustained by the facts; the parties, vendors, sought their own interest by disposing of their own property.

But it is contended, in this connection, that by the act it became the interest of each of the spouses that the other should die first, and the interest of the vendee that both should die as soon after its execution as possible.

The husband died years before the wife departed this life, and the purchaser had paid all of the installments.

The executed contract cannot be recalled or set aside upon that ground.

For reasons assigned, the judgment appealed from is affirmed, at appellants' cost.