BREAUX, C. J.
Plaintiffs brought this suit to annul and set aside defendant’s title to her property.
Plaintiffs are the grandchildren and forced heirs of the late Eliza Lagrange, widow of Adolph Jean Lacroix, who departed this life in the year 1902.
Plaintiffs went into the possession of the property of her succession.
The last husband of the late Eliza Lagrange was the late Adolph Jean Lacroix, who departed this life in the year 1892, leaving Eliza Lagrange, his wife, his universal legatee.
Plaintiffs attack the sale made by their grandmother and Jean Lacroix to John Langles of nine pieces of real estate in this city.
Defendant is the owner of one of these nine pieces, and the action is directed against her to set aside the sale made to her of that particular city lot. She in good faith bought the property from Langles.
The consideration of the original sale of the nine lots of which defendant owns one was an annuity of $29,000, which the buyer, John Langles, promised to pay in different installments, made payable in eight years from the date of the act.
The buyer delivered nonnegotiable notes, representing the annuities, due by him as purchaser of the property first referred to, to the said Adolph Jean Lacroix and Mrs. Eliza Lagrange, his wife.
There were conditions attached to these notes. One of them was that in case of the death of the vendors before their maturity they were not to be collected at all and the mortgage was to be extinguished.
In so far as husband and wife attempted to favor each other in the transaction, plaintiffs attack the sale on the ground that it was an understanding between married persons and contrary to public policy.
Plaintiffs also set out the ground that these vendors undertook to stipulate regarding the assets of a succession not yet devolved, in violation of a prohibitory law.
There are other grounds alleged.
Heretofore, in the Costa Case, 119 La. 781, 44 South. 477, all the grounds urged in plaintiffs’ original petition were decided adversely to the demand which is now brought against the present defendant.
*480 The learned counsel for plaintiffs aver that they have closely read the opinion in the cáse just cited, and that as a result they have filed a supplemental petition, in which they endeavored to supply omissions and cure defects in their original petition.
Plaintiffs’ grounds are set out in their supplemental and amended petition.
We do not think that we should specially take up the grounds that have been heretofore disposed of with a view of deciding them again. None the less .wo will consider the new points urged from the view presented by plaintiffs’ learned counsel.
In the Costa Case, just cited, we held that the sale in question, attacked by plaintiffs, had consideration; that the amount declared to have been paid in cash had some reality.
After reconsidering the issue, we are confirmed in the ground heretofore taken and decided.
The plaintiffs in the present action in their said supplemental petition endeavor to meet and overcome our decision heretofore expressed by alleging that the cash payment mentioned in the deed was fictitious; that it was the merest simulation, made manifest by the fact that Langles, the buyer, received $1,800 frpm rental, while the act, on the contrary, recites that the amount was paid in cash.
. Plaintiffs urge that, as they have alleged that the amount was taken out of the rental, it must be taken as true for the purpose of deciding the exception.
The position is hardly tenable in view of the fact that the deed of sale of record (a copy of which is now before us) shows the contrary, and we have already decided that this declaration in the deed is binding.
But, conceding, for the discussion, that it- is as plaintiffs alleged, we none the less do not think that plaintiffs are entitled to a judgment for reasons that we will state later.
Regarding the annuity we will state that according to plaintiffs it amounted to $3,000 per year, while the annual revenues of the property amounted to $3,600 per year — a profit plaintiffs claim of revenues collected by Langles over the annuity of $600 per year.
Again, regarding values, plaintiffs alleged that the property was worth $30,000, being $6,700 over the value placed upon it in the transfer to Langles at the time of the execution of the deed.
We may as well state at this time that the difference in value from $24,000, estimate placed upon the property in the said deed of sale to Langles, to $30,700, value alleged by plaintiffs, cannot be cause for setting aside the sale to the present defendant. It does not appear that she, one of the vendors, had the least cause or the most remote ground for suspecting that the value placed on the property was less than stated.
The parties, Mrs. Lagrange and Jean Lacroix, were at liberty to place that value upon the property.
In order to make it appear that Langles, the purchaser, gained a great and undue' advantage over the vendors, plaintiffs in addition alleged that Mrs. Lacroix was 78 years of age, and that in consequence the buyer had good ground to hope that she and her husband, who was her' senior, would not live to collect the whole annuity.
Plaintiffs alleged, further, that their grandmother accomplished a double purpose in thus selling. She enjoyed the fruit's of the property for the rest of her life, and at the same time evaded the law and disinherited her forced heirs.
We are impressed by the fact that the defendant accepted the title to the lot in question on the faith which a record title inspired.
We take up plaintiffs’ contention that the amount was inadequate, because Langles, the buyer, collected rental which exceeded the yearly installments.
In our decision cited above we did not go as far in conceding for the purpose of deciding this point as we propose to do at this time.
*482 We do not see our way clear to liold that a third person, after more than 10 years after the deed under which the property is held in good faith, can be ousted from her posses-session and her title be annulled. She, the purchaser here, could not very well know that the amount as declared in the deed as having been paid in cash was not cash, but consisted of a sum which the buyer collected on the property as rental.
The original owners sold the property for an amount which they held out as fair. If it was not fair, it does not prejudice the rights of tho defendant. This court is committed to the principle that the owners must be held to some good faith in placing titles of record.
Buyers of property in good faith have rights, as well as owners who place titles of record, as well also as heirs of owners; and if the former sell and the heirs remain silent for years the title must be held good.
It has been decided that a married woman (although the law seeks to protect her) who makes a simulated sale in the interest of her husband or in compliance with his wishes must bear the consequence if the title passes to third persons. Broussard v. Broussard, 45 La. Ann. 1085, 13 South. 699; Maurin & Co. v. Rouquer et al., 19 La. 364, 594; Richardson v. Hyams, 1 La. Ann. 287.
In the recent case of Gougenheim v. Ermann, 118 La. Ann. 577, 43 South. 170, and in Thompson v. Whitbeck, 47 La. Ann. 49, 16 South. 570, and in Bordelon v. Gumbel & Co., 118 La. 645, 43 South. 264, all these decisions uniformly hold substantially to the views before expressed.
The discussion has been to this point on the assumption that the sale was simulated. In reality it was not simulated.
A contract may be entered into for the payment of an annuity and be binding, though the property transferred as a consideration returns more rent than the transferee binds himself to pay. It may surely become binding in the course of time, even if not binding at the time entered into.
In reference to this contract it should be borne in mind that the vendors of the lots in question were old. Both owned the property. The wife had the larger number of lots. As relates, to the husband, older in years, we infer the wife sought to protect him, though it was not much of a protection after all; for he owned two of the lots sold to Langles and was to receive only $50 a month, while she received the remainder.
We have not found that there was violation of any prohibitory law which can have the effect of divesting the defendant from the ownership of the property. She, the purchaser here, is not concerned, and cannot be held to a responsibility and liability because of the contract, in which both the husband and wife appear as vendors. It may well be that owners may sell property on credit, on conditions very much resembling an annuity, without committing acts of fraud and simulation.
From that point of view it does not seem that there was any intention on the part of these aged persons to deprive their grandchildren of the legitime. There is really no legitime involved here.
The French text authors on this subject— that is, on the subject of annuities, or sales to secure annuities — following the decisions of their court, disagree upon the subject.
It is stated by one of these authors that recent jurisprudence, different from the old, holds that a sale is valid, though an annuity representing the price is less than the rental. One of these authors states that the price may be simulated and “derisive,” to translate his wor.d, if it has no proportion to the value of the thing sold. Baudry-Lacantinerie de la Vente et de l’Echange, § 129, et seq.
When a vendor parts with his property for an annuity, he may be influenced by special reasons to accept a limited price, as, for *484 instance, a certain and fixed revenue in preference to the rental revenues, more, or less uncertain. He may wish to shield himself from the loss which may be occasioned by a fortuitous event, that might destroy the thing sold or diminish its revenues. He may wish to relieve himself of the cares and annoyances to which, a lessor is exposed, and which are sometimes very considerable.
The amount agreed upon is an appreciable revenue — in consequence, a price. Id.
The learned text author discusses the subject learnedly and interestingly, and is emphatic in the declaration that there is a price.
In Troplong on Sales, similar views are expressed. Troplong is frequently referred to among the French text-writers as a learned and reliable authority on the subject of sales.
We will not pursue this branch of the case further. There is other French authority in accord with the foregoing. Others are not in accord upon the subject.
The allegations of plaintiffs’ petition and the questions of law to which they have given rise lead to the one inference that there was conveyance of property for a valid consideration.
The sale, it is true, has been construed in the light of an annuity (that was plaintiffs’ contention). It has been reviewed in that light, and a conclusion reached different from the contention.
It was a transfer for a fixed consideration, to be paid annually, absolutely, and without contingency.
Tears have elapsed. In the presence of the vendors, and without any objection on their part, the property has, as authorized by the recorded title, been treated and considered as the property of others than the original vendors. While the original vendors were living and present in this city, the property was conveyed to a third person.
For reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.