The opinion of the court was delivered by
Nicholls, C. J.
The evidence shows that on the 25th day of August, 1885, John A. Miller sold the property in litigation herein to David and Solomon Bloch for eight hundred dollars, with a power of redemption in the vendor within twelve months. The act was duly recorded. Miller remained in possession during the year allowed him to redeem, paying rent as a tenant. At the end of that time he vacated the premises, and David and Solomon Bloch, on the 13th day of October, 1886, sold the property for one thousand five hundred dollars cash to Abel West. This sale was also duly recorded. In the interval between the purchase by the Blochs and their sale to West, a revocatory action was instituted by Turner & Gates against Miller and the two Blochs to have the sale set aside as fraudulent, but the plaintiffs were defeated in the action, and the sale maintained. They seem to have renewed their attack through an hypothecary action directed against West, grounded upon the fact that before he bought they had recorded a judgment which they had obtained against Miller, and upon a contention that the contract between him and the Blochs was not one of sale or transfer of ownership, but simply one of suretyship, which, leaving the title still in Miller, the property became affected by their judicial mortgage in the nominal ownership of ihe Blochs.
The proceedings in that case are not before us, but are referred to *1040 by plaintiff’s counsel, and it would appear that Turner & Oates were again unsuccessful in their suit.
The present action was brought by Broussard, in January, 1895. A very large portion of the transcript is taken up with testimony as to the value of this property at the time of the contract between Miller and David and Solomon Bloch. It is obvious, from reading the prayer of plaintiff’s petition, that he is not seeking to have the contract between those parties set aside as a sale on account of lesion, or on account of fraud, but to have the act of the 25th of August, 1885, purporting to be an act of sale with power of redemption, declared to be, in fact, an act of mortgage. The prayer is “ that the pretended contract of sale be declared to be a quasi .mortgage or a pignorative contract not divesting the title of Miller or his estate, and that said sale by David and Solomon Bloch be declared inoperative, null and void, the property restored to the possession and ownership of the estate of Miller.”
The prayer as against West is based upon the theory that when he bought from the Blochs, the property to his knowldge did not belong to them, but to Miller.
So far from conceding that the contract evidences a sale, and directing his attack against it as such, the whole theory of plaintiff’3 case is that it is not a sale, but that Miller’s title has never been divested at all, and that the property has been all the time the pledge of his creditors. The testimony we have referred to, was an attempt, we presume, by plaintiff to bring his case within the line of decisions cited by him, which have declared that redeemable sales, unaccompanied by delivery, of which the consideration is inadequate, will be treated by the courts, in the absence of proof to the contrary, as contracts by which the property nominally sold stands as a security.” Baker vs. Smith, 44 An. 929; Watson vs. James, 15 An. 386; Calderwood vs. Calderwood, 23 An. 658; Groves vs. Steel, 2 An. 480; Payne vs. Hubbard, 42 An. 395; Wang & Cottam vs. Finnerty, 32 An. 94.
The contract in question stood upon the public records as a sale with a power of redemption, and the property had, after the period of redemption, and prior to the institution of this suit, passed from the parties who appear in the act as vendees, into the ownership and possession of a third person, who has paid, as shown by the testimony, a large price for it in cash. Whatever may be the differ *1041 ence of opinion as to the value of the land at the time of the contract between Miller and the Blochs, we think the latter could, beyond question, have maintained it, as a valid contract of sale, from any attack made upon it, either by Miller or his creditors, on the ground of lesion. There was nothing on the face of the deed which would have placed West on inquiry. Under such conditions he was authorized to deal with the Blochs as the owners of the land, unaffected by any secret, unknown equities between them and Miller. It would be too late now for the plaintiff, as a creditor, to attack the act for fraud, even if he could have done so against an innocent third person, who had dealt on the faith of declarations made by the vendor in an authenic act of sale, placed upon the public records, and matters have gone too far for the application of the theory of plaintiff’s case to this property (assuming it to have been justified by the facts) in the hands of West, unless he could bring home directly to him knowledge-of the exact situation. Plaintiff has attempted to do this, but we think unsuccessfully. Assuming that West had knowledge when he bought the property of the existence of a pending revocatory action for fraud between Turner & Oates, Miller and David and Solomon Bloch, the effect of such knowledge was done away with the moment that judgment was rendered in that case in defendant’s favor. In the dec ee West would have found justification for having dealt with the parties when he did, in so far as that particular kind of attack was concerned, and the existence of the suit would not have conveyed to him notice of the possibility of vices in the apparent title of the Blochs of a diametrically opposite character, for the first attack admitted the reality of the sale, but attacked it for fraud, while the second would deny the sale and attempt to hold the property as never having gone out of the ownership of Miller. The necessities of the case do not require us to make any declaration as to what was really the character of the act between Miller and David and Solomon Bloch, but we think it proper to say that, in our opinion, it was precisely what it purported to be, a sale with power of redemption.
John A. Miller himself, in his answer in the revocatory action brought by Turner & Oates to set aside his sale to David and Solomon Bloch, averred that he had sold the land to them on the 25th August, 1885; that the sale was for the consideration named in the deed, which was actually paid; that the whole transaction was in *1042 good faith; that the possession passed with the deed, and that he remained on the place for some time after the act, but as the tenant of Bloch & Bro., to whom he was paying rent.
If the statement of George Miller, one of plaintiff’s witnesses, was to be taken as showing the true facts of the case, plaintiff’s position would not be bettered, for according to that witness the act was passed as a mandate to Block & Bro. to sell, coupled with a promise on their part, that after a sale should have been effected they would, after reimoursement of the amount due to themselves, pay over to Miller the surplus. He says that after the sale to West, he, under directions from his father, John Miller, was sent to collect the surplus arising from West’s purchase, bub was told by the Blochs that the price had been exhausted by the indebtedness due them by Miller. West’s purchase was recognized; a money liability over from the Blochs to him was all that was claimed by Miller. This secret understanding (if it existed), inconsistent with, the facts shown by the public records, did not effect West, a purchaser in good faith.
We think the judgment appealed from is correct, and it' is hereby affirmed.