(34 South. 602.)

No. 14,443.

ADAMS et al. v. DREWS et al.*

(March 2, 1903.)

VENUE—TRESPASS TO LAND—DEED—CORRECTION OF ERROR.

1. Where an action is brought for the recovery of real estate, and for the value of timber alleged to have been removed therefrom, it must necessarily be brought against the actual possessor of the land; but if he disclaims title, discloses the name of the owner, who is thereupon made a party defendant, and shows that he was a possessor in good faith, there is nothing left of the suit against him but the claim for the value of the timber removed by him, which, being segregated from the claim against the owner for the land, should be asserted by means of a personal action brought at his domicile.

2. Whilst an error in the description of real estate may be corrected as between the parties to the act in which it appears, a different case presents itself after a third person, acting in good faith, acquires rights with respect to the property as erroneously described. The error cannot be corrected to the prejudice of such rights.

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; E. B. Talbot, Judge.

Action by Sitgreaves Adams and others against Gustave Drews and others. Judgment for plaintiffs, and defendants appeal. Reversed.

Edward Simon, for appellants. Hébert & Hébert (Henry Denis, of counsel), for appellees.

Statement of the Case.

MONROE, J. Plaintiffs, as surviving children and heirs of Christopher Adams, Jr., and of Harriet Adams, his wife, in April, 1900, brought this action in the district court

---

*Rehearing denied June 9, 1903.

for the parish of Iberville to recover from Gustave Drews 320 acres of land, situated in that parish, together with the value of the timber which had been cut, and might be removed therefrom. The defendant Drews, who resides in the parish of St. Mary, filed a plea to the jurisdiction of the court, ratione personæ, upon the trial of which he offered in evidence a notarial act dated March 27, 1900, and duly recorded, whereby he had sold the land in question to the Brownell-Drews Lumber Company, Limited; his purpose being to disclaim both title and possession. The judge a quo was of opinion, as we assume, that the transfer of title did not of itself determine the question of actual possession, and, in the absence of other evidence upon that subject, overruled the plea. The defendant then excepted (1) that the petition does not allege that he is in actual possession; (2) that the citation was not properly served; (3) that the Brownell-Drews Lumber Company, Limited, a corporation domiciled in the parish of St. Mary, owns the property, and should be made defendant in the action for its recovery; and (4) that the claim for the value of the timber alleged to have been removed is too indefinitely stated. The court heard evidence on these exceptions, and they were taken under advisement October 9th, with leave to counsel to file briefs by October 19, 1901. Upon October 18th plaintiffs filed an amended petition, praying that the lumber company be made a party defendant, and reiterating, as against that company, all the allegations of their original petition. Upon October 19th the exception that the defendant Drews was not in possession was referred to the merits, and the other exceptions were overruled. Drews then answered, alleging that he had purchased the land claimed by the plaintiffs by a public act, duly recorded, in 1892, from parties whom he names, and whose title he sets forth, and that he and his authors had enjoyed open, undisturbed possession thereof, as owners, in good faith, from 1847 until March 27, 1900, when he sold it to the lumber company, and that he thereafter neither owned nor possessed the property, and that plaintiffs have no right of action against him therefor, and have no right to make him a defendant in this suit for the purposes of their claim for the value of timber alleged to have been removed by him.

And he also pleads prescription. The lumber company then appeared and excepted that it cannot be made defendant in the present suit by means of a supplemental petition, for the reason that Drews, the original defendant, not having been in actual possession of the land, the suit was improperly brought as against him, and abated when that fact was disclosed; that the appearer can be sued for the recovery of the land only in an independent action, and cannot be made a codefendant with Drews, as against whom there is left only a personal action for the recovery of the value of the timber alleged to have been taken by him.

These exceptions were overruled, and the lumber company answered, setting up title acquired from Drews, calling him in warranty, and pleading prescription. Thereafter Drews again excepted that the plaintiffs having substituted the lumber company in his stead, as defendant, with respect to the claim to the land, the suit, as to him, abated; and, this exception having likewise been overruled, he answered the call in warranty, admitting his obligation as warrantor.

Upon the trial on the merits the only testimony offered upon the subject of actual possession at the date of the institution of the suit was that of Henry Shaw, who, being sworn as a witness for plaintiffs, testified that he had been working for Drews for 10 years; that he had taken trees from the land in question, under the latter's direction, in 1892, and again in 1896, and had subsequently deadened other trees. He further said. "I go through there every year on behalf of Mr. Drews. I have been through there this year on behalf of Mr. Drews." There was no attempt on the part of the defendants to contradict this testimony, or to show any other possession than is thereby indicated.

Upon the question of title, it appears from the evidence that in 1847 Christopher Adams, Jr., the father of the plaintiffs, furnished to H. E. Lawrence certain money, to be invested in land for their joint account; that, with the money so furnished, Lawrence bought state internal improvement warrant No. 143, which was located and patented to him April 20, 1850, under patent 413; that the location was made on lots 1 and 4, section 24, and lots 1 and 4, section 25, township 11 S., range 11 E., in the S. E. Dist., W. of the Mississippi.

river, but was incorrectly described in the warrant as having been made on lots, bearing the same numbers, in sections 24 and 25 of township 11 S., range 11 W.; the fact being that there are no such sections or lots in the range last mentioned. It further appears that in February, 1853, there was recorded in the conveyance office of the parish of Iberville an instrument in writing, dated May 1, 1847, purporting to have been executed by Lawrence, in which he acknowledges having received from Adams the sum of $964.43, and having invested the same in "state warrant No. 143, for land on Grand river, entered on jt. acct.," and in which, after describing or attempting to describe the lands that had been entered, he certifies as follows: "The above lands are entered by H. E. Lawrence for the joint account and benefit of C. Adams, Jr., and H. E. Lawrence." The original of this instrument has disappeared, and, whilst the circumstantial evidence leaves little room for doubt upon the subject, there is no direct proof that it was executed by Lawrence. It contains, moreover, an error in the description of the land here claimed, in this: that it describes the lots as situated in range 12, instead of range 11; the fact being that there are no such lots in range 12. In 1854 Lawrence's half interest in the property, as thus erroneously described, was seized and offered for sale by the sheriff of the parish of Iberville under a writ of fieri facias issued in the suit of The Louisiana State Bank v. Henry E. Lawrence. Adams had in the meanwhile died; and Lawrence, having received notice of the seizure, wrote to a Mr. Read, who, as we infer, was one of Adams' executors, in part, as follows:

"I regret extremely that I have not been able to fix that land matter with C. A., Jr., but these judgments go crossways and cannot be arranged as we would wish. My object in writing you this is to inform you that D. N. Hennen, who purchased a note of mine from the State Bank, for ½ the face of it, has seized said land and the sheriff of the parish of Iberville notifies me he will proceed to sell, etc. In May, 1850, I sold to R. B. Brashear my undivided half of said lands. I know not whether the sale was recorded and think probably the seizure is of the ½ belonging to estate of C. Adams, Jr. You had better examine into and enjoin the sale if it is Mr. Adams' interest he has seized. I shall try to be there before the sale, if possible."

No conveyance to Brashear seems to have been recorded, and the seizure was made of Lawrence's interest in the property, under a judgment which had been obtained against him by the bank, and not by Hennen, who was probably the attorney of the bank. No steps appear to have been taken to prevent it, and the sheriff, proceeding under his writ, adjudicated the property seized to Mrs. Adams, the widow of C. Adams, Jr., for $1,260, of which, according to his return, she paid, in cash the amount called for by the writ, say $783.85, "and retained in her hands the balance of said price, or the sum of $476.15, in compensation of what is due her and her children, heirs of C. Adams, Jr., on the loan made to H. E. Lawrence for the purchase of the above-described property, as per document signed by said Lawrence, and of record in this parish."

It does not appear that Lawrence was then aware that there was any error in the description of the property. In 1860, however, he wrote to Barstow, who, as we understand it, was one of the Adams' executors, saying, inter alia:

"In examining all the law papers in connection with the seizure and sale under the Hennen execution, I found that lots Nos. 1 and 4 of section 24, township 11, range 11, and lots Nos. 1 and 4 of section 25, T. 11, range 11, were not legally seized and advertised or sold under the Hennen execution, and that the titles to the above described lots in sections 24 and 25 are still my property and stand in my name. * * *

"The understanding between myself and C. A., Jr., was, that he would furnish all the cash and I was to select and enter the lands on our joint account; not for our joint interest in the profits, but half of all the acres belonged to me for my trouble, and to be entered in my name if I pleased. I entered the lots 1 and 4, section 24, T. 11, R. 11, containing 160 acres, lots 1 and 4, section 25, T. 11, R. 11, containing 160 acres. * * * Enclosed I send you a correct copy from the township maps, that you may see at a glance how the lands lie and enable you to judge correctly of the matter. I also send you a copy of the notice of seizure," etc.

The copy of the map referred to shows the land actually entered to be the land here in dispute, and, upon the notice of seizure (being the notice addressed to Lawrence in the suit of Louisiana State Bank), Lawrence wrote to Barstow:

"I merely send you this copy that you may see that they have described the lands—lots 1 and 4, Sec. 24, township 11, range 12; lots 1 and 4, Sect. 25, township 11, range 12. There is no section 23 [24] and 25 in township 11, range 12. We only want justice and I presume you will as readily do me justice as if this error had not occurred. I merely send it to you to see for yourself."

It is evident that there was a misunderstanding between Lawrence, upon the one side, and the widow and executors of Adams, upon the other, as to the agreement pursuant to which the lands had been entered. Lawrence asserting that Adams was to furnish all the money, and that he (Lawrence), for his services in entering the lands, was to acquire title to an undivided half interest therein; and the position of the other parties being that, whilst Adams was to furnish the money, it was to be regarded, in so far as Lawrence was concerned, as in the nature of a loan, and that Lawrence was to be compensated for his services by receiving one-half of the profits which might eventually be realized. It is also evident, in view of the fact that Lawrence's interest in the particular property here in question, the whole of which cost less than $1,000, was sold for $1,260, and that Mrs. Adams, as adjudicatee, paid $783.85 in cash, which amount went to the satisfaction of the judgment against Lawrence, that the latter came out of the transaction with that much in the way of clear profit. He, however, as we have seen, adopted the view that, whilst availing himself of the benefit which he had thus received, he could also utilize the error of description which he had discovered to defeat the sale from which that benefit had been derived. In 1866, therefore, he executed an instrument purporting to convey the land in question to Charles N. Black as trustee for Frances E. Lawrence, his wife, and in 1872 he made the following indorsement on the back of the patent for the same, to wit:

"This certificate of land, C. Adams thought he bought under judgment, but he did not describe the lands correctly, therefore they remain my property."

In 1880 Black executed an instrument purporting to convey the property to "Townsend Lawrence, as trustee of Frances E. Lawrence, succeeding to said trust," and in 1892 Lydia E. Lawrence, acting in her own right, and as agent of Maggie B., Robert B., Townsend, and Frances E. Lawrence, conveyed said property, with other similar tracts, to the defendant Drews; the parties named as vendors being the heirs and widow of H. E. Lawrence, and the consideration of the sale being 50 cents an acre.

This instrument was recorded in the parish of Iberville shortly after it was executed. Drews began at once to cut timber on the land, and the plaintiffs have endeavored to show that he remained in possession from that time until the filing of this suit.

Upon the other hand, it is reasonably certain that at least from 1880 to 1897, inclusive, with the exception of a few years, the property was assessed to Mrs. Adams, who alone paid the taxes. It also appears that during part of that period there was an arrangement between Mr. Denis, representing Mrs. Adams and her children, and first C. A. Brusle, and later J. W. Austin, whereby the latter were authorized to cut timber, on terms which were agreed on. Mr. Brusle gives the following testimony: "I was elected sheriff of this parish in 1879, and took charge of my office in 1880, and was sheriff for three terms. * * * The taxes on these lands were paid continuously during my terms of office by Mrs. C. Adams, through Mr. H. Denis. My recollection is not very clear, but in 1890, and perhaps previous to that, I had permission from Mr. Denis, representing Mrs. Adams, to remove timber. * * * I believe I did remove some timber from these lands. I cannot say how much. It has been so long ago. No one else paid taxes on these lands while I was in the office. They were not assessed to any one else. * * * (Cross-Ex.) I recollect a lawsuit I had with Gus Drews. It was for 200 [trees] or more, that he was about to remove from these lands, and I wanted to stop him. It terminated by my abandoning it, because of Mr. Denis not wanting to go into it, because Mrs. Adams was opposed to lawsuits. Mr.

Drews took the trees off. That was in 1892—some time in the summer. Mr. Drews claimed the lands, and I claimed them for Mrs. Adams; but when Mr. Denis refused to join me in the suit for Mrs. Adams, of course, I had nothing to do but abandon the suit."

There is no evidence in the record which brings home to Drews knowledge of the fact that there was any error of description either in Lawrence's admission with respect to Adams' interest in the lands which had been entered for their joint account, or in the seizure and sale under execution whereby Mrs. Adams acquired the interest of Lawrence in the lands.

The judge a quo rendered judgment for the plaintiffs on the question of title, but rejected their demand against Drews for the value of the timber removed by him, on the ground that he was a possessor in good faith. The defendants have appealed, and the plaintiffs pray that the judgment be amended in the latter respect.

## Opinion.

In view of the plaintiffs' demand for the recovery of immovable property, which they allege to be in his possession, it was not only competent, but necessary, for them to make Drews a party defendant, and it is probable that, if he had undertaken to set up title in himself and defend his possession, he might have been held, in the Iberville court, though a resident of St. Mary, for the purposes of the mixed as well as of the petitory action. Conceding, however, though it is none too clearly established, that he was in actual possession, it is nevertheless an uncontroverted fact that, long before the suit was filed, he had sold the land to the lumber company by an authentic act, duly recorded, from which it follows that when he disclosed the name of the owner there was nothing left of the suit against him, save the claim for the value of timber which he had removed, which claim, being segregated from the claim against the company for the land, and in view of the fact that he was a possessor in good faith, could only be asserted by means of a personal action at the place of his domicile. We are therefore of opinion that after a defendant had been found, capable of standing in judgment with respect to the title to the land,

and after he had established the character of his possession, Drews' plea to the jurisdiction should have been maintained.

As between the plaintiffs and the heirs of Lawrence, the written admissions of the latter, and the oral testimony, received without objection, leaving out of view the acknowledgment recorded in 1853, show that the property here claimed was acquired by Lawrence for the joint account of Adams and himself; and, as the plaintiffs are the heirs of Adams, their right to recover to the extent of an undivided half interest would be beyond controversy, if there were no third person in the case. And the same may be said of the other undivided half interest, acquired by Mrs. Adams at the sale under execution, since neither Lawrence nor his heirs could very well be permitted to avail themselves of the error in the description of the property under the circumstances here presented.

We have, however, to deal with the rights of third persons who are not affected by those circumstances. In 1847 Lawrence obtained a title from the state, in his own name, to 320 acres of land in range 11 E. In 1853 there was placed of record an instrument purporting to be an acknowledgment by him to the effect that he had acquired certain lots, aggregating over 755 acres, in range 12, and that they had been entered for the joint account of himself and C. Adams, Jr. The original of this instrument has been lost, and there is no direct proof that it was executed by Lawrence. Conceding, however, arguendo, that it was so executed, and that it was not only sufficient as a notice, but is effective as a muniment of title, it is sufficient and effective only with respect to the property to which it refers; and it refers to certain tracts described as situated in range 12, whereas the property here claimed is situated in range 11. If, therefore, the defendant Drews had exhausted his resources in the examination of the title to the property which he was about to buy, he would have found that it had been entered in the name of H. E. Lawrence, that it had been patented to H. E. Lawrence, and that there was nothing whatever on the public records to indicate that H. E. Lawrence had ever disposed of, or that any one else was interested in, it. What, in point of fact, he may have

known or suspected, does not appear in the record. It does appear that he bought the property from the heirs of Lawrence, placed his title of record, went into possession, and began cutting timber, and that the agent of the Adamses, though apprised of those facts, and made aware that he was claiming the property as owner, declined to participate in a suit which seems to have been brought by a licensee, acting under his authority, for the purpose of testing the matter; and the suit was accordingly abandoned, and Drews went on cutting timber, and eight years later sold the property to the lumber company, now before the court as a defendant.

The learned judge of the district court, in his reasons for judgment says:

"The question whether Drews was in good faith is principally one of fact. There is nothing in the record to show that he had any reason to doubt that his title was good, until the institution of this suit. The error in the description of the property as to range was calculated to mislead, and was only made manifest on the trial of this case. There was no apparent defect on the face of his title, and the error as to description was only discovered by circumstances and evidence dehors the title."

We concur in the view thus expressed, but it seems to us that the necessary deduction therefrom is that the title acquired by Drews is good, or at least that it is not shown to be bad, since the question involved is not whether he acquired from the owner, but whether he acquired from one whom, under the laws regulating the tradition of real estate, he was justified in dealing with as the owner; and that question is answered in the affirmative when it is said that he acted in good faith, and obtained his information from the public records. The case of Levy v. Ward, 33 La. Ann. 1033, to which we are referred by the learned counsel for the plaintiffs, is applicable here, but not in the sense in which it was intended to be applied. In that case the plaintiff brought suit against the succession of Ward for the correction of an error which had been committed in the description

of land purchased by him from the decedent, and a third person, creditor of Ward's succession, having a judicial mortgage on the property to be affected, intervened. There was judgment in the district court in favor of the plaintiff, dismissing the intervener, who, with the defendant, appealed; and in this court the judgment appealed from was affirmed, but the Chief Justice, as the organ of the court, said:

"We cannot relieve the intervener from the judgment appealed from, first, because the matter in dispute, under the intervention, is not appealable; and, second, because, even then, the succession of Hope [intervener] had no 'interest' justifying the intervention, for the reason that the right asserted can in no manner be affected prejudicially by the judgment in this case on the issue of title between Levy and the estate of Ward to the land on which the succession of Hope claims to have a judicial mortgage, resulting from the inscription, before Ward's death, of a money judgment against him."

The court therefore recognized the doctrine that whilst errors in description may be corrected, as between the parties to the acts in which they appear, a very different case presents itself when a third person has in the meantime acquired rights which might be prejudiced by such correction.

These conclusions would seem to point to the absolute rejection of the plaintiffs' demands, but it is plain that they have been unjustly deprived of their property, and, whilst the evidence before us does not justify us in holding that the defendants are to blame, the fact that Drews was not examined and did not testify as a witness induces us to leave the matter open for further investigation, should the plaintiffs think proper to avail themselves of the opportunity.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment rejecting the plaintiffs' demands, as in case of nonsuit, and at their costs in both courts.