MONROE, J.
[1] This is a petitory action for the recovery of certain land in the parish of Acadia, which plaintiff alleges that he acquired, by purchase, from the widow and heirs of A. S. Chappuis, and which, with the *895 exception of 27 arpents, was acquired by said Chappuis apparently by purchase from Joseph Royer; the 27 arpents mentioned having been similarly acquired from Charles Cudin. The defense set up is that the ap parent sale from Royer to Chappuis was intended as a mortgage, and that plaintiff and his apparent vendors have fraudulently conspired to put the title in his name, and have him bring this suit in order to shut off inquiry and prevent defendant from establishing that fact. It is not alleged that defendant was induced, by error, fraud, or misrepresentation, to execute an act of sale, when an act of mortgage was intended; the charge of fraud being leveled exclusively at the dealings between plaintiff and his alleged vendors, and the idea conveyed being that he is without interest, and is merely a person interposed for the fraudulent purpose above stated. Upon the trial, however, defendant offered parol testimony to show that the conveyance from Royer to A. S. Chappuis, which, upon its face, is an ordinary, notarial act of sale, duly recorded, was intended to operate as a mortgage, but, in the absence of any allegation that defendant was induced to execute it by reason of error, misrepresentation, or fraud, the testimony was properly excluded. C. C. 1901, 2236; Mather v. Knox, 34 La. Ann. 410; Chaffe v. Ludeling, 34 La. Ann. 967; Jackson v. Lemle, 35 La. Ann. 855; Mulhaupt v. Youree, 35 La. Ann. 1052; Johnson v. Flanner et al., 42 La. Ann. 522, 7 South. 455; Godwin v. Neustadtl, 42 La. Ann. 738, 7 South. 744; Keough v. Meyers & Co., 43 La. Ann. 952, 9 South. 913; Wilkins v. Durio et al., 45 La. Ann. 1119, 13 South. 740; Bagley v. Bourque, 107 La. 395, 31 South. 860; Franklin v. Sewall, 110 La. 292, 34 South. 448; Maskrey v. Johnson, 122 La. 791, 48 South. 266.
There being no effective attack upon the title of plaintiff’s authors, their reason for conveying the property to plaintiff would appear to be a matter of no concern to defendant. The charge that plaintiff and his authors fraudulently conspired for the purpose alleged was, however, inquired into and is unsustained by the proof, from which it appears: That A. S. Chappuis bought the main body of the land in dispute from the defendant Joseph Royer by an ordinary act of purchase and sale, as hereinabove stated, of date November 13, 1907, which contained no suggestion that it was intended to be other than as it appeared, and which was duly recorded. That he thereafter leased the property, .first, to Royer himself, then, at his request, to his son, and then to Oniel Cormier, a third person, and that he paid all the taxes and expended something like $3,000 in improvements. When the term of his lease (which was for one year from November 13, 1907) expired, or, possibly, before, Royer left the property and went to another part of the parish, where he bought lots, built a house, and engaged in farming. He says, in his testimony in this case:
“I went there with the intention of staying there permanently. I thought I had no more rights here [the word ‘here’ referring to the place which is here in dispute].”
A. S. Chappuis died probably in 1910, and in September of that year plaintiff, who is shown to be a farmer of good standing— worth some $30,000 or $40,000 — called upon Abner Chappuis (who appears to have been attending to the business of his father’s succession) with a view of buying a tract of land which he thought belonged to the succession. 1-Ie was told that the succession did not own it, but that the widow and heirs of Chappuis. would sell him the Royer place. 1-Ie accordingly went off and looked at the Royer place, and after a few days came back and agreed to take it, at a valuation of $11,-000, in payment of which price he agreed to convey to the Ohappuises certain real estate in the town of Rayne, for which he had a short time before paid $4,000, and to give his notes for the balance of $7,000. It ap *897 pears that the wife of JosephsRoyer had not moved away with him, but her son, Emile, being the lessee of the old place for the year 1908-09, that she had remained there; and she still remained after Cormier became the lessee for the year 1909-10; and it also appears that another son, Adolph, had stayed on the old place, working as a laborer, first, for his brother, Emile, and then for Cormier. About the time that Cormier’s lease was to expire and when plaintiff was negotiating for the purchase of the place, there were rumors to the effect that Mrs. Royer would refuse to leave; that she was asserting some sort of an interest in the property, though precisely upon what basis no one seemed to know, the probability, as we infer from the testimony, being that she conceived the idea that she had some rights growing out of the community which existed between her husband and,herself, or growing out of the fact that the place had been for many years the homestead of the family. Neither the Chappuises nor the plaintiff attached much importance to what they heard; and, whilst the latter employed a lawyer to examine the title for him, he suggested that in the meanwhile they should take advantage of the presence in Rayne of one of the Chappuis family, who lived in New Orleans, to have the deeds, the one, from him to them, of his Rayne property, and the other from them to him, of their Royer property, executed, with the understanding that both deeds should be deposited in bank until the lawyer whom he had employed made his report, and with the further understanding that in the event that the report should prove satisfactory, and that Mrs. Royer should really refuse to move out, the Cháppuises should assume the burden of putting him in possession. Thereafter, when the lawyer reported that the title was good, as it had already been vested in plaintiff, and as Cormier’s lease had expired and he was leaving, it was thought advisable to bring the present action in plaintiff’s name, and it was so brought; the petition alleging that Joseph Royer and his wife and son are in possession, although, as it proved, the parties who were, and are, holding possession, are the wife and son, the husband and father and former owner having permanently removed therefrom in the belief that he “had no more rights there.”
We find nothing in the facts thus recited or in any other facts disclosed by the record to implicate plaintiff in any conspiracy. He is a plain farmer, and, though illiterate, is apparently very intelligent. There is nothing in the record to indicate that he knew anything about the business relations which may have existed between Royer and the Chappuises, or had any reason to conspire with the one family against the other. Royer had put the title to his property in the name of Chappuis, and it so appeared upon the public record; and, when the attorney employed by plaintiff to examine the title entered upon the discharge of that duty, he so found it, and he reported that the title was vested in the Cháppuises, and that plaintiff could safely buy the property from them. It is true that plaintiff knew, and so stated, after the deeds had been executed, that in any event he could not lose, as the Chappuises were behind the title, as warrantors, and had ample means, but that does not authorize the inference, which defendant’s counsel draws, that he was relying entirely upon the solvency of the Cháppuises,. and not at all upon the public records or the report of the attorney whom he had employed, and presumably paid to examine those records.
|2] Our conclusion, then, is that plaintiff is not a conspirator, or a party interposed, but is a purchaser, for a valuable consideration, of property, the recorded title to which stood in the name of his vendors, and that he is entitled to be protected in his purchase against any claims or equities arising *899 out of the previously existing relations between his vendors and their authors or other persons. Levy v. Ward, Ad., 33 La. Ann. 1033; Thibodaux v. Anderson, 34 La. Ann. 797; Boyer v. Joffrion, Sheriff, et al., 40 La. Ann. 657, 4 South. 872; Broussard v. Broussard, 45 La. Ann. 1085, 13 South. 699 ; Broussard v. West, et al., 47 La. Ann. 1033, 17 South. 476; Adams et al. v. Drew et al., 110 La. 456, 34 South. 602; Adams et al. v. Brownell-Drews Lumber Co., 115 La. 179, 38 South. 957; Bordelon v. Gumbel, 118 La. 645, 43 South. 264; Vital v. Andrus, 121 La. 221, 46 South. 217; Rudolf v. Gerdy, 121 La. 477, 46 South. 598; McDuffie v. Walker, 125 La. 153, 51 South. 100; Jolivet v. Chaves, 125 La. 923, 52 South. 99, 32 L. R. A. (N. S.) 1046; John T. Moore Planting Co. v. Morgan’s, etc., Co., 126 La. 866, 53 South. 22; Riggs Cypress Co. v. Albert Hanson Lumber Co., 127 La. 455, 53 South. 700; Riggs v. Eicholz, 127 La. 750, 53 South. 977; Sorrel v. Hardy, 127 La. 847, 54 South. 122.
Whilst the defendant Joseph Royer had himself moved off the land in dispute, he seems to have countenanced his wife and son in remaining in possession, and, as the matter is one that concerns the community, we think that he and the son should be held responsible for the costs.
It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against the defendants, decreeing plaintiff to be the owner of the property here claimed by him and entitled to the possession thereof, and decreeing that defendants forthwith vacate said property and surrender possession of the same. It is further decreed that the defendants Joseph Roy-er and Adolph Royer pay all costs.