No. 2945

Second Circuit

———

ADAMS v. SMITH

———

(May 13, 1927. Opinion and Decree.)

———

(*Syllabus by the Editor*)

1. **Louisiana Digest—Error and Mistake— Par. 2, 15, 16.**

An error in the description of real estate may be corrected as between the parties to the act in which the error appears.

2.  Louisiana Digest—Error and Mistake—
    Par. 2, 15; Registry—Par. 7, 8.

In view of Articles 2266 and 2275 of the
Civil Code, when an owner of real
estate erroneously describes property
which he does not own and does not
intend to sell, the purchaser acquires
title to the property which he intended
to sell, but so far as third parties are
concerned there is no sale.

3.  Louisiana  Digest — Registry—Par.  7;
    Judgment—Par. 229, 230.

The judicial mortgage under Article 3328
of the Civil Code has effect only
against the owner of record and,
therefore, where property is sold un-
der wrong description, there is nothing
in the record to show ownership of
the vendee.

4.  Louisiana Digest—Error and Mistake—
    Par. 15; Judgment—Par. 229, 230, 231.

The correction of an error in the descrip-
tion of property in a deed dates back
to the time of original conveyance, but
cannot prejudice rights of third per-
sons acquired in the meantime, such
as judicial mortgage creditors.

Appeal from the Fifth Judicial District
Court of Louisiana, Parish of Richland.
Hon. John R. McIntosh, Judge.

Action by Everett A. Adams against
G. W. Smith, et al.

There was judgment for plaintiff and
Interstate Electric Company, Inc., defend-
ant, appealed.

Affirmed in part and reversed in part.

Ellis & Ellis, of Rayville, attorneys for
plaintiff, appellee.

Theus, Grisham & Davis, of Monroe, at-
torneys for Interstate Electric Company,
Inc., defendant, appellant.

ODOM, J. This is a suit to correct the
description of certain lots in a deed and
to cancel judicial mortgages.

There was judgment ordering the deed
corrected as to the description of the lots
conveyed and ordering the cancellation
of the mortgages.

The Interstate Electric Company, Inc.,
one of the mortgage creditors, appealed.

OPINION

George Wesley Smith owned lots 2 and
4 of block 3 of the Smith-Wren Addition
to the town of Rayville, which two lots
comprised the entire west half of said
block. The east half of the block consists
of lots 1 and 3. The map or plat of the
subdivision in which this block is located
was recorded upside down in the recorder's
office, so that lots 2 and 4, owned by
Smith, appeared on the east side of the
plat.

On March 14, 1906, Smith sold to R. Q.
Etzel the east half of block 3 (being lots
1 and 3). Etzel sold, by the same descrip-
tion, to the Rayville Realty Company,
and, by mesne conveyances, under the same
description, the property finally went into
the hands of the plaintiff.

Smith intended to sell and Etzel in-
tended to purchase lots 2 and 4, or the
west half of said block, as did all subse-
quent vendors and purchasers.

Smith did not own the east half of the
block.

The error in description arose because
of the fact that the plat was recorded up-
side down.

After Smith sold the property two of his
creditors, the Claiborne Abstract Company,
Inc., and the Interstate Electric Company,
Inc., obtained judgments against him and
had them duly recorded in the mortgage
records of Richland parish.

Alleging that Smith intended to sell and did sell lots 2 and 4, or the west half of said block, whereas the deed recites that he sold the east half, or lots 1 and 3 thereof, the present owner of the property brought this suit against Smith to have said error in description corrected, and against said judgment creditors to have the mortgages resulting from the recordation of their judgments cancelled and erased insofar as they operate against the said lots 2 and 4, or the west half of the block.

It is well settled that an error in the description of real estate may be corrected as between the parties to the act in which the error appears.

Waller vs. Colvin, 151 La. 763, 92 South. 328, and authorities therein cited.

There being no dispute as to the fact that the description in these deeds is a clerical error, the judgment of the District Court ordering the correction is correct.

But for the court to go further and hold that the mortgages resulting from the recordation of the judgments against Smith are not operative against this property we think was error.

The court held, as we understand it, that Smith intended to sell and did, as a matter of fact, sell to Etzel lots 2 and 4, or the west half of block 3, whereas the deed conveys lots 1 and 3, or the east half of said block; so that at the time these judgments were recorded he did not own lots 2 and 4, and that therefore the judicial mortgages are not operative against them.

It is unquestionably true that as between Smith and Etzel, Smith's deed divested him of all title to lots 3 and 4, or the west

half of the block, because admittedly he intended to sell and Etzel intended to purchase that property.

But the question before the court is not what rights these parties have as between themselves, but, on the contrary, what are the rights of Smith's judgment creditors who recorded their judgments subsequent to the date on which he sold.

In other words, did the deed from Smith to Etzel describing lots 1 and 3, or the east half of block 3, affect Smith's title to lots 2 and 4, or the west half of the block insofar as Smith's judgment creditors are concerned.

We do not think so.

According to our view, when an owner of real estate intends to sell certain property but, through error, describes in the deed property which he does not own and does not intend to sell, the vendee, as between himself and his vendor, acquires title to the property which the vendor owned and intended to sell, but so far as third parties are concerned there is no sale at all.

Especially is that true where, as in this case, there is nothing in the deed to identify the property except the description thereof. While the deed is not in the record (the case was submitted on an agreed statement of facts) it is not suggested that it bore reference to any other deed or that there was anything at all in the deed by which the property could be identified, except the description above noted.

Article 2275 of the Civil Code provides that:

"Every transfer of immovable property must be in writing."

And Article 2266 provides that sales, contracts and judgments affecting immovable

property which are not recorded as provided ·by law:

"* * * shall be utterly null and void, except between the parties thereto."

"The conveyance records are the only things to which one dealing with real estate or any real right thereon needs to look, under the repeated decisions of this court."

Baird vs. Atlas Oil Co., 146 La. 1091, 84 South. 366.

Waller vs. Colvin, 151 La. 765, 92 South. 328.

Our jurisprudence is uniform to this effect.

Therefore, if Smith, subsequent to the sale to Etzel, had sold lots 2 and 4, or the west half of block 3, to a third party who acted upon the faith of the public records, and such third party had recorded his deed, the second purchaser would have acquired a valid title, because there was nothing on the record to disclose that Smith's title was not good.

Or, if Smith had granted a conventional mortgage on the property, the mortgagee would have been protected.

That point is conceded, for counsel for plaintiff, in brief, say:

"We recognize the correctness of the doctrine that a person who purchases or acquires a mortgage on the strength .of the public records should be protected against any unrecorded instruments, errors in description, etc."

But counsel argues that this principle should not be applied in cases where third persons acquire rights under judicial mortgages; and the District Court so held. Counsel cite no authority in support of their argument. Counsel's argument and the holding of the District Court, we imagine, is grounded upon the assumption that creditors do not obtain judgments against their debtors and acquire rights thereunder on the faith of the public records.

That is an assumption, however, and may not be true. The purpose of obtaining and recording judgments by ·creditors is to enforce their claims against the property of their debtors, and the fact that a debtor has property recorded in his name might be the sole inducement for a creditor to incur the expense of reducing .his claim to judgment and having it recorded.

Not only that, but the property of a debtor is the common pledge of his creditors, and so long as a man has property recorded in his name he has or may have credit which he might not otherwise enjoy.

If the court is to indulge in presumption, it might go further and presume that the defendant, Interstate Electric Company, Inc., would not have extended Smith credit to the amount of $1500.00 if he had not owned this or some other real property recorded in his name.

It cannot be assumed that these defendants did not extend credit on the faith of the public records, and it may be that they incurred the expense of obtaining and recording their judgments because of the fact that their debtor appeared to own this property.

Real estate cannot be hidden and is an asset which gives its owner standing and credit in the commercial world. It may well be, and there is no suggestion to the contrary, that the creditors of Smith parted with their goods and money on the faith of the public records, which showed that Smith owned the property in question.

The rule laid down in the Code and sanctioned by an unbroken line of jurispru-

dence, is that, except between the parties thereto, unrecorded conveyances are "utterly null and void".

If the court should "wobble" on this point it would at once become involved in "complications and contradictions from which there is no extrication".

The deed from Smith to Etzel describing lots 1 and 3, or the east half of block 3, conveyed no notice to third persons that he sold or intended to sell lots 2 and 4, or the west half of said block. Therefore, as to them, the deed may as well not have been written and recorded.

In the case of Baker vs. Atkins, 107 La. 490, 32 South. 69, it was held that:

"Where A. is the owner of real estate by undisputed title, and sells the same to B., who fails to record his title, the judgment creditors of A. can acquire judicial mortgages on such property by recording their judgments after the date of such sale and before its registry."

In that case the point was made that the judicial mortgage could not be enforced against the property which A. had sold because he did not actually own it at the time the judgment was recorded, he having sold to B. under Article 3328 of the Civil Code, which reads as follows:

"The judicial mortgage may be enforced against all the immovables which the debtor actually owns or may subsequently acquire."

But the court specifically held, in the Baker case, supra, that:

"Giving effect to these provisions (the codal provisions with reference to registry, etc.,) there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record; for, except as between the parties thereto, an unrecorded conveyance is 'utterly null and void' and conveys no title."

The same principle applies where property is sold under wrong description and where there is nothing in the deed by which the property intended to be sold can be identified.

According to the records, Smith owned lots 2 and 4, or the west half of block 3, when these judgments were recorded, and was, therefore, the "actual owner" thereof so far as these third persons are concerned.

It is true that when an error in description is subsequently corrected by deed between the parties or by judgment of the court, the correction dates back to the time of the original conveyance; but such correction cannot operate to the prejudice of third persons who have acquired rights in the meantime.

In the case of Pittsburgh, C. C. & St. L. Ry. Co. vs. Betts, an Indiana case reported in 53 N. E. 439, the court said:

"The mistake in the description was cured by subsequent deed executed by the commissioner under an order of the court in an action brought by the appellee against Homer to obtain such correction, and as no new rights had intervened, the date of correction and confirmation related back to the time of the original conveyance."

In the case of Waller vs. Colvin, 151 La. 765, 92 South. 328, the court said:

"An error in the description of real estate may always be corrected between the parties to the act in which it appears, but not to the prejudice of third persons acting in good faith and acquiring rights with respect to the property erroneously described."

Citing Adams, et al., vs. Brews, et al., 110 La. 456, 34 South. 602.

For the reasons assigned it is ordered, adjudged and decreed that the judgment

appealed from, insofar as it orders the deed corrected, be affirmed; and further ordered, adjudged and decreed that said judgment be reversed and avoided insofar as it orders the cancellation of the judicial mortgage of the Interstate Electric Company, Inc., and further ordered that plaintiff's demands against said company be dismissed. Defendant, Smith, to pay the costs of the lower court. Plaintiff to pay the costs of this appeal.