### THRIFT HOMESTEAD ASS'N v. PALMISANO et al.
No. 14873.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

A. D. Danziger and P. H. Stern, both of New Orleans, for appellant.

Frederic C. Querens, of New Orleans, for appellee.

JANVIER, Judge.

Pontchartrain Lumber Company, Inc., intervenes in this foreclosure proceeding, claiming that as a furnisher of material used in the construction of a building on the mortgaged property it is entitled to be paid by preference and priority over the mortgagee out of the proceeds of the sale of the property. A separate appraisement and sale was had, and the intervener now seeks to assert its alleged lien against the proceeds of the separate sale.

The mortgagee resists the claim of the intervener, declaring that neither at the time of the execution of the mortgage nor at the time of the sale at foreclosure was there any properly recorded lien in favor of intervener, and contending that, since the mortgage was granted upon faith in the clarity of the public records, intervener cannot now be heard to assert its claim to the prejudice of the mortgagee, regardless of any possible rights which it may have against the mortgagor.

The facts are as follows: On July 20, 1927, Thrift Homestead Association bought from Charles Papini lot No. 36 of square A of the city of Harahan, parish of Jefferson. At the same time the homestead association also acquired other lots, but we are concerned only with lot No. 36. At that time it is conceded that there was no lien recorded against the said lot of ground.

On the same day the homestead association sold the said lot with other property to Mrs. Victoria Palmisano, wife of Thomas Marullo, retaining vendor's lien and mortgage to secure the sum of $3,300.

On October 31, 1927, the present intervener, claiming to have sold certain lumber and building material to one Anthony P. Marullo of Harahan, La., filed with the clerk of court and ex officio recorder of mortgages for the parish of Jefferson a sworn statement of the said account (for $523.51) and caused the inscription in the records of the said parish of the said claim as an alleged lien against the said lot No. 36. The said document was recorded as evidencing a claim against Anthony P. Marullo.

On May 24, 1928, Mrs. Victoria Palmisano, wife of Thomas Marullo, in whose name the title to the said lot No. 36 then stood, obtained an additional loan from the homestead association, and on that day, to wit, May 24, 1928, the original mortgage of $3,300 was canceled and a new mortgage in the sum of $8,300 was granted and duly recorded.

When the new mortgage was granted there

were inscribed on the public records no mortgages or liens against either Mrs. Victoria Palmisano Marullo or Thomas Marullo, except the original mortgage for $3,300, which was called, and a second mortgage for $2,390, which was paid out of the proceeds of the new loan, and which second mortgage was also canceled.

The claim and the alleged lien of the present intervener for $523.51 was, as has been stated, recorded on the public records, but only against Anthony P. Marullo. Consequently, when the homestead association, before making the new loan for $8,300, caused the records to be searched in an effort to discover whether there were any incumbrances against the property of the said Mrs. Victoria Palmisano, wife of Thomas Marullo, or against the said Thomas Marullo, the recordation against Anthony P. Marullo was not discovered.

As we understand counsel for intervener, the claim for priority is based on the contention that Thomas Marullo, to whose wife the loan was made, is the same person as Anthony P. Marullo, to whom the building material was sold, and that therefore a lien recorded against Anthony P. Marullo bears upon real estate standing in the name of Mrs. Victoria Palmisano Marullo and owned by the community existing between her and her husband, Thomas Marullo, and that, since it is charged that it is a well-known fact that Marullo used both names indiscriminately, the mortgagee should have known that a lien recorded against Anthony P. Marullo bore against property in which Thomas Marullo was interested.

We find in the intervention no charge that there was any fraudulent collusion between Marullo and the mortgagee to deprive the intervener of its rights by the use by Marullo of any other given name than his own, and, in the absence of such charge of fraud, we see no reason why the mortgagee, who relied upon the fact that there was on the records no inscription against the person to whom it made the loan, should not be protected by those records.

The expressions used by us in Jackson Homestead Association v. Zimmer, 16 La. App. 647, 134 So. 126, 128, are quite in point here, and are as follows:

"We think that the really important question is whether or not an innocent party may purchase property, or may lend money on property, and in doing so rely on the public records, and our view that he may do so

is confirmed by many decisions of our Supreme Court:

"'One who, upon faith in the public records, purchases real estate, the recorded title to which stands in the name of his vendor, is entitled to be protected in his purchase against any claims or equities arising out of the previously existing relations between his vendor and the latter's author or other persons.' Breaux v. Royer, 129 La. 894, 57 So. 164, 38 L. R. A. (N. S.) 982.

"'A purchaser of real estate in good faith from the owner of record is not affected by equities which may have existed between former owners of the property and third persons, but which do not appear of record.' Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am. St. Rep. 375.

"'The conveyance records are the only thing to which one dealing with real estate needs to look, under the repeated decisions of this court, nor can innocent third persons purchasing upon the faith of the public records be bound by any knowledge except such as is disclosed by such records.' Cole v. Richmond, 156 La. 262, 100 So. 419, 423.

"That a mortgagee, just as a purchaser, may rely on the mortgage records, has also been often decided, notably in Boyer v. Joffrion, 40 La. Ann. 657, 4 So. 872, 873. * * *"

Counsel for the intervener concedes that the decision in Jackson Homestead Association v. Zimmer, supra, would be in point had the foreclosure been on the first mortgage for $3,300, but he insists that, when the original mortgage for $3,300 was canceled and the new mortgage for $8,300 was inscribed, it was necessarily subordinated to the previously recorded claim of the intervener. But he overlooks the fact that the previously recorded claim of the intervener appears as a claim against Anthony P. Marullo and not as a claim against Thomas Marullo, and there is no difference between not recording a lien at all and recording it under the wrong name. In neither case will it come to light as the result of a proper search of the records.

The question is whether there was on the records at the time the mortgage was granted any inscription of a lien which either was discovered by the mortgagee or should have been discovered. If the question can be answered in the affirmative, then manifestly the lien should prime the mortgage, but it is very evident that any one intending to make a loan to Thomas Marullo who, in an effort to protect himself, should search the

records and should ascertain that the property in question stood in the name of the wife of Thomas Marullo and not in the name of Anthony P. Marullo, would not have discovered a recorded lien against Anthony P. Marullo, or, had he discovered it, would not have been put on notice that the lien was in truth effective against the property of Thomas ·Marullo, or of his wife, Mrs. ·Victoria Palmisano Marullo.

If Marullo used two names indiscriminately, then intervener's officials were under the same duty to discover that fact as, they claim, was imposed upon the mortgagee. They sold him the material; they intended to claim a lien against his property. They could have searched the records and discovered that the property on which they intended to claim the lien did not stand in the name of Anthony P. Marullo. They should have recorded their lien in the name of the person who actually owned the property. If they have sustained a loss, it results from their own negligence.

"Where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed on him who most contributed to it." Thompson v. Hibernia Bank & Trust Co., 148 La. 57, 86 So. 652.

Of course, nothing that we have said has any bearing on the claim of the intervenor directly against Marullo, if there is any such claim.

Counsel for intervener calls our attention to the case of National Homestead Association v. Graham, 176 La. 1062, 147 So. 348, and he contends that the decision in this case is authority for the position assumed by intervener, and that it establishes the rule that a lien results wherever material is sold whether it be sold directly to the owner or to the contractor for use in a building to be erected for the owner, and also whether or not the owner is his own contractor. The case is not in point, but a reading of it shows clearly that, in order that there be a lien which will prime the rights of a third par- ·ty, it must not only be recorded, but the inscription must be made in the name of the person who, on the public records, is the owner of the property.

Since, in the district court, judgment was rendered granting a preference to the intervener, and since we believe that that judgment is incorrect,

It is ordered, adjudged, and decreed that the judgment appealed from which was rendered on January 15, 1934, be, and it is, annulled, avoided, and reversed, and it is now ordered that the rule of the intervener for priority of payment be, and it is, dismissed.

Reversed.